*MAYER & MORGAN and others v. ADRIAN & VOLLERS and others.

*Statute of Frauds--Contract for the Sale of Land--Evidence-- Mortgage Sale.*

1. Where a signed memorandum of sale was not attached to the printed advertisement of sale nor otherwise referred to it, parol testimony is not admissible for the purpose of connecting them

2. A memorandum of a contract of sale upon which the plaintiff relies in an action for specific performance, must show not only who is the person to be charged, but also who is the bargainor.

3. If this is done by description, parol evidence is admissible to apply the description, *i. e.* to show who is the person described.

4. While parol evidence is not admissible to vary or add to the terms of a written contract, in behalf of a party seeking specific performance, it is always admissible in behalf of a defendant resisting it.

5. Where at a mortgage sale, the auctioneer offered the property free of incumbrances and the defendant purchased with that understanding at the full value of the property; *Held*, That the defendant could not be compelled to accept the title when the property was encumbered with prior mortgages.

6. Where the auctioneer in such case told the defendant (who had notice of the prior incumbrances) before the bidding commenced, that the purchase money would be applied in extinguishment of such incumbrances, and thereupon offered the property for sale without any announcement to that effect; *Held*, That the jury were warranted in finding that the property was sold free of incumbrances and that defendant purchased with that understanding.

7. Where the defendant in such case refused to comply with the terms of sale and thereafter entered into possession of the property under a mortgage executed to him by the owner; *Held*, not to be an affirmance and ratification of his previous purchase.

(*Crawley* v. *Timberlake*, 2 Ire. Eq. 460; *Leigh* v. *Crump*, 1 Ire. Eq. 299; *Cannaday* v. *Shepard*, 2 Jones Eq. 224; *Lloyd* v. *Wheatly, Ibid.* 267; *Kornegay* v. *Spicer*, 76 N. C. 95; *Mosby* v. *Hodge, Ibid.* 387, cited, distinguished and approved.)

---

*FAIRCLOTH, J. being a stockholder in defendant Bank, did not sit on the hearing of this case.

CIVIL ACTION for Specific Performance tried at Spring Term, 1877, of NEW HANOVER Superior Court, before *Seymour, J.*

·'The plaintiffs are Mayer & Morgan and Feist Mayer.

The defendants are Adrian & Vollers and The Bank of New Hanover. It was alleged in the complaint that on the 13th of October, 1871, Feist Mayer bought of one Charles R. Mayer a certain lot in the City of Wilmington for a valuable consideration, upon which said lot there were two prior mortgages executed respectively to H. A. London for $14,400 and to Richard Dosher for $2000. On the 7th of March, 1872, Feist Mayer executed a mortgage on the same lot to defendant Bank for $2000 with power of sale, and on the 23d of February, 1874, he executed another mortgage on the same lot to the defendants, Adrian & Vollers, for $2,917.86 and expressed on its face that there were three prior mortgages, viz: to London, Dosher and the Bank. On the 25th of February, 1874, Feist Mayer executed another mortgage on the same lot to Mayer & Morgan for $4000. The Bank advertised and sold the property under its mortgage, and Adrian & Vollers bought at $14.600 upon the terms announced by M. Cronly, (of the firm of Cronly & Morris, auctioneers) who was the authorized agent of the Bank to make the sale. It was further alleged that Adrian & Vollers purchased the interest of Feist Mayer with notice of the prior mortgages and took possession of the premises. The plaintiffs notified Isaac B. Grainger, the President of said Bank, that unless he would agree to become a party plaintiff in an action to compel Adrian & Vollers to comply with the terms of purchase, he would be made a party defendant. No reply was made by Grainger to the letter communicating the intention of the plaintiffs to make the Bank a party. And it was further alleged that the Bank was the trustee of plaintiffs and had failed to inform

them whether said purchasers had complied with the contract or terms of purchase.

Thereupon the plaintiffs demanded judgment; (1) that said purchasers perform the said contract of purchase according to the terms thereof ; (2) that the Bank account for the proceeds of said sale ; and (3) for an account to ascertain the amounts due respectively to the Bank, Adrian & Vollers and Mayer & Morgan:

The defendants Adrian & Vollers denied that only the interest of Feist Mayer in said property was sold as aforesaid, and averred that the Bank sold the property absolutely, and not merely the interest of Mayer, and that their bid was a full and fair price for the same clear of all incumbrances ; that the amount due and unpaid on the London and Dosher mortgages was about $9840, and that it would have been unreasonable to suppose that they bought the property subject to such heavy liens and agreed to pay a sum which is its full value without incumbrances ; and that they had no notice of the prior mortgages and cannot be held responsible beyond the amount of their bid.  They admit that they have received rents for one of the stores, and say that Feist Mayor leased the other store to them in trust to apply the rents to debts due them, and secured by the mortgage mentioned in the complaint.  They have not complied with said terms for the reason that soon after the sale they discovered that the Bank could not on its part comply with the same by making them a clear title, and have considered themselves released from all obligations in respect thereto.

The defendant Bank, in the material part of its answer, says, that it was its purpose and design to convey to the purchaser or purchasers at said sale, only such an interest in the property mentioned as it could legally convey by virtue of the power contained in the said mortgage to this defendant ; that Adrian & Vollers understood they bought the property absolutely and would obtain a clear title upon pay-

ment of said prior incumbrances which were to be satisfied out of the amount bid by them, and that they have made no payment to this defendant on account of said purchase either in cash or otherwise.

The terms of sale and description of the property are set out in the opinion of the Court. Upon issues submitted the following facts were found.

*Findings of the Jury :*

1. Adrian & Vollers bought the property, mentioned in the complaint and sold by the auctioneer on the 9th of September, 1875, free from all incumbrances.

2. The jury unanimously believe that they bid for the property at the time of the sale under the idea that it was sold out and out, clear of incumbrances

3. They were led to that understanding by the auctioneer while conducting the sale and changing the terms of the sale.

4. The price bid was a fair price for the premises, clear of incumbrances.

The plaintiffs' counsel then moved for judgment *non obstante veredicto*, which His Honor overruled, and rendered judgment in favor of the defendants and dismissed the action. Appeal by plaintiffs.

*Mr. E. G. Haywood,* for plaintiffs.

*Messrs. George Davis* and *W. N. H. Smith,* for defendants Adrian & Vollers.

*Messrs. Wright & Stedman,* for defendant, Bank of New Hanover.

BYNUM, J.    Before the plaintiffs can recover in an action for specific performance they must establish that the contract declared on, or some note or memorandum thereof was put in writing and signed by the party to be charged thereunto, or by some other person by him thereto duly author-

ized within the statute of frauds. It is admitted that the contract itself was not reduced to writing, but it is alleged that a "memorandum" of the contract of purchase was reduced to writing at the time of sale and signed by the defendants, Adrian & Vollers, through their agent, the auctioneer, who cried the sale. This is denied by them and they rely on the statute of frauds. Bat. Rev. ch. 50, § 10. It is therefore necessary to inquire whether this "memorandum" of the contract was such as is required by the statute to bind the defendants.

There were five mortgages at the same time, upon the same lot, the Bank of New Hanover holding the third. The Bank under a power of sale in its mortgage undertook to sell the lot for the payment of its debt, and to that end duly advertised the sale giving a sufficient description of the property, stating also the time, place and terms which were cash. Of this the defendants had notice and attended the sale.

At the time of sale the auctioneer first read the printed advertisement before alluded to, and then he read the terms of sale as written in his auction book which were as follows; "The purchaser pays for all papers and $6000 cash, the balance in 6, 12 and 18 months, with 8 per cent interest, the purchaser to have possession on the 1st day of October, 1875, and his notes to draw interest from that time." It does not appear that the "printed advertisement" was pasted in the auction book with the "terms of sale" there written, or was in any way attached to or physically connected with the written terms of sale; and they in no way refer the one to the other on their face.

Adrian & Vollers bid off the property at the sum of $14,600. Morris, the auction-partner of Cronly, who cried the sale, then and there, in the presence of Vollers who was announced as the purchaser, immediately made in his auction book the following entry;

"Sale at the Court House, Sept. 9th, 1875."

" MAYER PROPERTY."

Adrian & Vollers
34 ft. on Market St. 58 ft. on alley and 132 back. Line on Shrier Bros. Lease until Oct. 1, 1876. $6000 cash. Bal. 6, 12 and 18 months at 8 per cent. Possession Oct. 1, 1875. Notes bear interest from date. Purchaser to pay for all papers.by the 15th inst."
$14,600

The "memorandum" of the contract is set forth *verbatim* because upon its construction the plaintiffs' right of action depends. For it will be observed that this agreement can-- not be helped out by a reference either to the printed "ad- vertisement" or the "terms of sale ;" and that, for the reason that they are not attached or connected together, or by mutual reference connected so as to make one whole, from which the contract is to be ascertained. The agreement must adequately express the intent and obligation of the parties. Parol evidence cannot be received to supply any thing which is wanting in the writing, to make it the agree- ment on which the parties rely. It may be of one or many pieces of paper, provided the several pieces are so connected physically or by internal reference that there can be no un-- certainty as to their meaning and effect when taken together. But this connection cannot be shown by extrinsic evidence. "If there is an agreement on one paper and something addi- tional on another, and a signature on another paper, that is not a written and signed agreement, unless these several parts require by their own statement the union of the others ; for if they may be read apart, or in other connections, evi- dence is not admissible to prove that they were actually in- tended to be read together." 3 Pars. on Contracts, 17. "But if it be necessary to adduce parol evidence in order to con-

nect a signed paper with others unsigned, by reason of the absence of any internal evidence in the contents of the signed paper to show a reference to, or connection with, the unsigned papers, then the several papers taken together do not constitute a memorandum *in writing* of the bargain so as to satisfy the statute." Benjamin on Sales, 160–1.

These general principles are well settled by the authorities cited in the learned brief of Mr. Davis. 1 Sugden on Vend. and Pur. 200; 2 Schouler on Pers. Prop. 519.

The signed memorandum not having been attached to the printed advertisement nor otherwise referring to it, and parol testimony being inadmissible to connect them, the advertisement is to be put out of view as though it had never been, and we are to consider the signed memorandum as the only evidence of the contract of sale. Does it contain all the essential requisites of a contract which can be specifically enforced?

1. Who are the parties in this memorandum of sale? It is settled to be indispensable that it should show not only who is the person to be charged, but also who is the bargainor. The name of the purchaser is required by statute to be signed. So no question can be made of the necessity of his name in the writing. But it is equally well established that the name or a sufficient discription of the other party is indispensable. "How" said MANSFIELD, C. J., "can that be said to be a contract or a memorandum of a contract which does not state who are the contracting parties?" *Champion* v. *Plummer*, 4 B. & P. 253; 3 Pars. on Contr. 13 and note. Benjamin on Sales, 169. In *Williams* v. *Lake*, 29 L. J. Q. B. 1, the defendant wrote a note binding himself as a guarantor and gave it to a third person for delivery, but the name of the person to whom the note was addressed was not written in the note. It was held by all the Judges insufficient to satisfy the statute and this decision was approved and followed in 1 Morse, 154. Benjamin on Sales,

.170.   But while all the authorities are clear that the memo-
randum should show who are  the parties to the contract, if
this is done by description the statute  is satisfied and parol
·evidence is admissible  to  apply  the  description, that is, to
show who is the person  described so as to  enable the Court
to understand the description.   In our  case  the  memoran-
·dum neither names nor  describes the  bargainor.   Neither
does it state that Adrian &  Vollers are the purchasers.   On
·one side of the memorandum are the words  "Adrian & Vol-
lers," and on the other, the figures "$14,600."   But the first
are not described as purchasers or the latter as the price bid.

We may *infer* therefrom that Adrian &  Vollers were the
·purchasers and at that price, but it is not so declared in the
writing, and we cannot  certainly know it without  recourse
to parol testimony which  the  statute  forbids.   Looking at
the memorandum alone, why should  it  be  more reasonably
inferred that the name "Adrian &  Vollers " indicated  who
were the purchasers rather than who were the vendors.   Cer-
tainly the implication that they  were  the purchasers is not
a necessary one from this meagre  entry, and  beyond  all
·question nothing whatever in  the  memorandum  contained,
·does or purports to declare that the Bank of  New Hanover
or any other party was the vendor  and  a party to the con-
tract of sale.

2.   But the defendants insisted  that  the  signed memoran-
·dum does not contain  all  the  material, terms of  the agree-
ment and is not therefore the  contract in  writing  which is
required by the statute.   Issues were  thereupon submitted
·to a jury who by its verdict found ; (1) that  the  auctioneer
.sold and the defendants purchased the property free of  all
incumbrances ; (2) that Adrian &  Vollers had reason to be-
lieve and were led  to  that  belief  by  the representations of
the auctioneer made to  them  at  the sale, that the property
·was to be sold out and out, and  that  they  bid  for  it with

that understanding and belief; (3) that the price bid was a fair price for the land clear of incumbrances.

The plaintiffs objected to the parol testimony by which the issues were established, as incompetent to vary or add to the terms of the written memorandum. But it is well established, that while such testimony is inadmissible for the party seeking specific performance, it is always admissible for a defendant resisting it. It is a principle of equity jurisprudence that parol testimony is admissible to rebut but not to raise an equity. If the written document does not fully represent the contract between the parties, it will defeat the action, or the plaintiff will be compelled to accept a performance according to the actual contract. 3 Pars on Contr. 389; *Townsend* v. *Staugrom,* 6 Ves. 328; *Garrard* v. *Grenling,* 2 Swanston. 244; *Martin* v. *Pycroft,* 2 DeG. M. & G. 785; 15 Eng. L. & E. 376, reversing same case; 11 Eng. L. & E. 110; Story Eq. §§ 769—70; 1 Sugd. Vend. & Pur. ch. 3, § 8, pl 27; Benjamin on Sales, 154–5.

If we put out of view the mortgage held on the property by Adrian & Vollers, which recited that there were two other mortgages prior to that of the Bank under which the lot was sold, the verdict of the jury was a conclusion of law rather than a finding of facts; for both the memorandum of the contract and the Bank mortgage and power of sale contained in it, impose on the seller the legal duty of making a clean title to the purchaser, because they all import a good title in the mortgagee making the sale. A purchaser not under a decree of sale by the Court cannot be compelled to take an equitable title or a doubtful one. 1 Sugd. Vend. and Pur. 297. But it was owing to the very fact that the mortgage to Adrian & Vollers gave them notice of the prior incumbrances that they before bidding inquired of the auctioneer, how the purchase money would be applied, and the kind of title that would be made. It was upon his assurance both before and at the sale, that the purchase money would

be applied in extinguishment of the prior incumbrances, that the purchase was made. He even assisted Vollers in calculating the amount due upon the prior incumbrances, and on the day of sale did not offer for sale the interest of Feist Mayer, but offered the property without proclaiming, as in good faith he was bound to do, that it was subject to prior mortgages. Everybody present except the mortgagees must have understood from the advertisement, the proclamation of the terms, and from the conduct and representations of the auctioneer, that the sale was of the entire property, free of incumbrances. Adrian & Vollers were made to believe that by arrangement between the Bank and the prior mortgagees, the sum bid would be used in removing the incumbrances and that they were to receive a good title. It was in that expectation thus induced that the defendants bid the full value of the land. The jury, therefore, were well warranted in finding that the auctioneer exposed the lot for sale free from incumbrances and that the defendants bid for it with that understanding. The plaintiffs admit that they cannot make such a conveyance and the defendants, the purchasers, refuse to accept any other. As the signed memorandum then does not contain the true contract, it is not a compliance with the statute and there can be no specific performance of it decreed.

It is found by the jury that the defendants bid the full value of the lot, yet it is admitted that they must pay $9,840 more, before they can get a good title by removing the incumbrances. The vendor, the Bank, making the sale admits that Adrian & Vollers did purchase under a misapprehension, and for that reason did not consider them bound or attempt to enforce a compliance; and the jury find that this misapprehension of the purchasers was induced by the conduct of the Bank itself through its authorized agent, the auctioneer. With what face could the Bank come into this Court and call upon the purchasers for a specific performance,

and how can these plaintiffs, who can and do seek a specific performance only through or by virtue of this questionable conduct of the Bank, place themselves upon other and higher grounds ? They must take the shade as well as the light of this singular conduct of the Bank. They claim that the Bank by this sale acquired rights which it holds as a trustee for them, and which they can enforce by this action, but it is too plain for argument that the equity of Adrian & Vollers against the enforcement of specific performance applies equally to the plaintiffs and the Bank. A vendor of property who makes statements respecting the property is bound to make them free from all ambiguity, and the purchaser is not bound, upon the spur of the moment of sale, to take upon himself the peril of ascertaining the truth or true meaning of his statements. A definite representation upon a fact affecting the value of the subject of sale, if it be untrue, will entitle the purchaser to resist specific performance. Kerr on Fraud and Mistake, 360 ; *Lord Brooke* v. *Roundthwaite*, 5 Ha. 304 ; *Stewart* v. *Alliston*, 1 Mer. 26.

3. It is however insisted that the purchasers, after they became fully apprized of the true character of their purchase and their defences to specific performance, affirmed and ratified it by entering into possession and receiving and collecting the rents and profits. The purchasers deny that they subsequently ratified the purchase, and affirm that they always treated the sale as not binding upon them, but void. They admit that they did take possession of part of the premises by receiving and contracting to receive rents. So far from affirming the sale the purchasers expressly refused to comply with its terms and repudiated it, and in that the Bank acquiesced. But Adrian & Vollers did not stand in the relation of strangers to this property. If they had been strangers there might have been some force in the argument. But they were mortgagees and as against these plaintiffs had

a right to the possession and the rents and profits until their debt was satisfied. This right they had independent of any acquired under their alleged purchase. Such a possession, rightful in itself, cannot be held to be an affirmance and ratification of the contract of purchase. *Crawley* v. *Timberlake*, 2. Ired. Eq. 460.

The specific execution of a contract in equity is a matter not of absolute right in the party, but of sound discretion in the Court; and an agreement to be carried into execution must be certain, fair and just in all its parts. *Leigh* v. *Crump*, 1 Ire. Eq. 299. If its strict performance under the circumstances would be harsh, inequitable and oppressive, a Court of Equity will not decree such performance. The party calling for specific performance in every part of the transaction must be free from every imputation of fraud or deceit, and if the agreement is affected by misrepresentation or tainted by deceit, it is incapable of being made the subject of interference by a Court of Equity in order to compel its specific performance. The party who calls for specific performance must show that his conduct has been clear, honorable and fair. Kerr on Fraud and Mistake, 388 ; *Cannaday* v. *Shepard*, 2 Jones Eq. 224 ; *Lloyd* v. *Wheatley*, Ibid 267 ; *Cox* v. *Middleton*, 2 Drew. 220 ; 1 Story's Eq. § § 736-70. Perhaps no more appropriate case for the refusal of the Court to compel specific performance could be presented than this, where the vendor by duplicity and misapprehension has induced the vendees to bid off a property to which no good title can be made, and to give a price approaching double the value of the interest he was authorized to sell.

The equity against specific performance in the view we are now taking of the case, is altogether independent of any question of the validity of the contract of sale, as not being in compliance with the statute of frauds.

In conclusion, attention is called to what was said by the Court in *Kornegay* v. *Spicer*, 76 N. C. 95, and *Mosby* v. *Hodge*,

76 N. C. 387. Here was a complication arising out of five mortgages piled one upon another. To ascertain the debts, adjust the equities and declare the rights of the several parties, were matters addressed peculiarly to the jurisdiction of a Court of Equity. All the parties being brought before the Court, a decree of foreclosure and sale of the entire property would have been made, a clean title executed to the purchaser, and the proceeds of the sale disbursed by the direction of the Court according to the rights of the several mortgagees. Such a course is generally advisable and in this case would have saved expensive and disagreeable litigation.

There is no error.

PER CURIAM. Judgment affirmed.