## FORT SMITH V. BROGAN.

1. EQUITY:  *Relief by injunction:  Specific performance.*

The city of Fort Smith offered for sale at public auction certain lots held by the city in trust to be sold for the benefit of schools.  In the advertisement of the sale, the lots were described according to the original plan and map by which they were laid off, and the plaintiffs at the sale insisted on the right to have their bids for the lots accepted according to the dimensions shown by that description.  But they were offered and cried at the sale according to the dimensions they would have after the deduction of a strip of land which it was proposed to add to the street on which they are situated.  An ordinance for widening the street by adding this strip was passed before the sale was advertised.  The plaintiffs were the highest bidders and the city tendered them deeds for the fractions remaining after deducting the encroachment of the street.  Upon their refusal to accept these, the city took steps to resell the lots when the plaintiffs obtained an injunction restraining the city authorities from making a further sale, and the Circuit Court, on final hearing, made the injunction perpetual. *Held:*  That a bill for specific performance of the contract of sale, was the appropriate remedy of the plaintiffs to enforce any right acquired by their purchase, and it was error to award the injunction as an independent remedy ; that the bill, if it could be considered as one for specific performance, could not be maintained even conceding that the attempt to widen the streets where the lots abut upon it is illegal, because (1) there was no memorandum in writing to satisfy the statute of frauds; (2) the specific performance of a contract of sale will not be enforced where, as in this case, there was a mutual mistake as to the thing bought and sold.

2. EQUITY PLEADING:  *Misjoinder of complaints.*

The plaintiffs brought an action to enjoin the city of Fort Smith from selling certain lots, held by the city in trust for the benefit of the common schools, alleging that the lots had been previously offered at public auction and purchased by the plaintiffs.  To their complaint, after the prayer for relief, they added a supplemental allegation to the effect that they are citizens and tax payers of the school district to be benefited by the sale of the lots, and that the sale, as newly advertised, is without authority of law and will be to the great injury of the school district.  *Held :*  That a complaint by the tax payers of the district cannot be joined with an effort to redress a private grievance, and cannot be looked to for the purpose of helping out the plaintiffs' case.

APPEAL from *Sebastian* Circuit Court.

R. B. RUTHERFORD, Judge.

Fort Smith v. Brogan.

*The City Attorney* for appellant.

Appellees' remedy, if any, was by *mandamus.*   *Hilliard on Inj., 19–20;  20 Ark., 100;  43 id., 62;  Mansf. Dig., secs. 4569, 4574.*

No injury is shown to appellees or any tax payer, and a party cannot enjoin an act which does not affect his private interests.   *25 Ark., 301.*

*The appellees pro se.*

The School Board had no power or authority to dedicate any of this property to streets.

The bill can be maintained upon either ground stated in it, the plaintiffs being beneficiaries under act of Congress.   *104 Ill., 429.*

COCKRILL, C. J.   The city of Fort Smith, through her officials, laid off blocks and lots on Wheeler street, in that city, in the territory ceded by Congress to the city for the benefit of the common schools of the Fort Smith District.   After the land had been ceded and laid off as prescribed by the act, but before the lots in controversy, which are a part of the ceded territory, were offered for sale, the city passed an ordinance to increase the width of Wheeler street.   The record recites that the consent of the adjacent property owners was obtained for the purpose of the dedication, the School Board undertaking to speak for the unsold lots ceded by the United States.   Afterwards the lots in controversy were advertised to be sold in pursuance of the act.   The description of them in the advertisement was made to conform to the original plan and map, but at the sale it was announced by the mayor of the city who had the direction of the sales, and by the auctioneer who cried the lots, that they would be sold not according to the

map, but by the lay of the widened street. According to the map the lots are nearly fifty feet deep; by increasing the width of the street they will be reduced to less than twenty feet in depth. They were offered according to their lessened dimensions. The appellants were bidders, and, one of them at least, notified the officer who was conducting the sale that, in his opinion, there was no authority to offer less than a whole lot as it appeared upon the official map, and demanded that his bid should be accepted for the lot according to the dimensions shown by the map. The auctioneer, however, cried the diminished lots as the mayor directed; the appellants were the best bidders for the lots in controversy, and they were knocked off to them. The city tendered them deeds, in proper form, for the fractions remaining after deducting the encroachment of the street. They refused to receive them, but demanded deeds describing the lots as laid off on the map. The city thereupon took steps to resell the lots, when the appellees procured an injunction restraining the city authorities from making a further sale, and upon a final hearing the injunction was made perpetual by the Circuit Court. From this decree the city appeals.

1. EQUITY:
Relief by injunction: Specific performance.

If the appellees desired to enforce a right acquired by their purchase, a suit for specific performance of the contract of sale was the appropriate remedy. They cannot be regarded as the owners of the property until their contract is completed, and they could not be heard to call into use the extraordinary powers of injunction except in aid of some legitimate remedy to enforce their equities. The injunction was improperly awarded, as an independent remedy. As the decree stands, the city is forever prohibited from offering the lots, or any part of them, for sale although the appellees have paid her nothing and may elect never to do so.

If by any stretch of liberality we could consider the bill as one for specific performance, and the injunction as merely aux-

iliary to it, the appellees' case would fail for several reasons, even though it be conceded that the attempt to widen Wheeler street where these lots abut upon it, is illegal.

There is no memorandum in writing showing the terms and conditions of the sale of the land, to satisfy the requirements of the statute of frauds. *St. Louis, I. M. & So. Ry. v. Beidler, 45 Ark., 17.* Auction sales by unofficial individuals aré within the meaning of the statute as well as sales conducted by private treaty. *Bateman on Auctions, 143; Waterman on Specific Perform. Contr., sec. 247; Mayor v. Adrian, 77 N. C., 83.*

But waiving this question, a court of equity would deny relief to the purchaser under the circumstances of this case in any event.

No deception was practiced on the appellees and they were not misled in any manner by the vendor. They understood that the vendor undertook to offer only a part of a fractional lot at each offering; but, inasmuch as the advertisement of sale called for the whole lot, and they conceived that the vendor had no discretion as to the quantity to be sold, they placed their bids for the whole. They were accepted only for the part which was offered. The vendor, therefore, offered one thing for sale and the intended purchaser bid for another. There was a mutual mistake as to the thing bought and sold. It may be admitted that the bidder's construction of the vendor's duty to sell the whole, and not a part, of each lot, was correct. But the mistake remains nevertheless; and a court of equity will always allow the vendor, in resisting a suit for specific performance, to show that by accident or mistake the thing sold is different from what he intended, and will refuse a specific performance for that reason alone. *Bateman on Auctions, sup. [45–46]; Story Eq. Jur., secs. 769, 770.* Especially would this rule apply to an auction sale where the other bidders were led to believe, by the announcement of a trustee, as they were in this case, that he was selling a part of a lot

only, when the appellees, through their superior knowledge, knew, as they claim, that he was selling the whole, while in fact he was crying only a part; for in that event there would be no real competition; the appellees would be permitted to succeed in buying more than their competitors were bidding for, and would thus drive a hard and unconscionable bargain at the expesné of the *cestui que trust.* A specific performance is never decreed where it would be inequitable under all the circumstances to do so.   *Story's Eq., supra; Tamm v. Lavalle, 92 Ill., 263.*

2. EQUITY PLEADING: Misjoinder of complaints.

After the appellees had alleged their cause of complaint and made their prayer for relief, they added a short supplement to their complaint to the effect that they were citizens and tax payers of the school district to be benefited by the sale of the lands, that the sale, as newly advertised, was without warrant of law and would be to the great injury of the school district, and asked that it be restrained.

A complaint by the tax payers of the district to enjoin the opening of a street or the sale of the fractional lots could not be joined with the appellees' effort to redress a private grievance; and if permitted to stand unchallenged in the complaint with it, it could not be looked to for the purpose of helping out their case.   The two controversies have no relation to each other and each must stand or fall without aid from the other.

The effort was to make the question of public interest subserve the purpose of the individual suit.   This could not be done, and we withhold the expression of opinion upon the public branch of the case until the question of the opening of the street is legitimately presented.

Reverse the decree and dismiss the bill.