## NANCY KERR *vs.* GEORGE W. PURDY and others.

Where a lease for a term of years gives to the lessee the right to purchase the premises at any time within the first three years, on paying a specified sum, and the lessee, during the period specified, purchases and obtains the title of two of the five heirs of the lessor, *it seems* this will be deemed a *part performance* on his part, and on the part of the heirs, showing an unequivocal election on his part to purchase the property, and a recognition by them of such right, which will, without any further tender, entitle him to file a bill for a specific performance.

*It seems* that on the death of the lessor, in such a lease, the interests of his heirs in the premises become severed, and the lessee must purchase of each his interest separately.

Kerr *v.* Purdy.

Where a lessee, under a lease reserving to him the right to purchase, within a given period, had evinced his intention to purchase, by making permanent improvements on the premises, to the value of several thousand dollars; had shown a willingness and desire to pay on receiving a deed; and had procured the money, in gold, to be used if necessary in making a tender; and there was strong reason to believe that a tender would have been unavailable, one or more of the heirs of the lessor having previously declared their determination not to execute a deed, and their belief that they were not obliged to; *Held* that under these circumstances a strict tender was unnecessary.

Where premises agreed to be sold are incumbered by a dower right and by a mortgage, a strict tender of the purchase money by the vendee is not necessary.

Delay in bringing a suit for the specific performance of an agreement by a vendor to convey, may be sufficiently excused by the continued avowal of ownership by the vendee; by his exclusive possession of the premises under claim of ownership, and refusal to pay since the day of payment; by the commencement and pendency of partition suits; and by the absence of any change in the condition or interests of the defendants in the property; these circumstances going to show that the defendants will receive no further detriment from sustaining such action than if it had been commenced sooner.

Under such circumstances, a purchaser bringing an action for a specific performance and offering to pay the purchase money, &c. will be entitled to a a decree for that purpose, although there was no strict tender made within the time specified in the contract. If the plaintiff has failed, before suit brought, to make a sufficient tender or offer, that may be taken into consideration in equitably adjusting the costs. *Time* is not so much of the essence of the contract as to bar the right.

APPEAL from a judgment entered on the report of a referee, denying a decree for specific performance of a contract to convey real estate, made between Elisha Purdy and Robert A. Kerr. The premises in question were, on the 23d of April, 1831, conveyed by their then owner to Uriah Drake, who, on the 18th of March, 1833, conveyed them, with another farm, to Elisha Purdy. The latter, in 1836, mortgaged these premises to one John W. Ward, for the sum of $800, which mortgage is still a subsisting lien on them, and is now held and owned by the defendant George W. Purdy. On the 31st of January, 1859, Elisha Purdy made the contract with Robert A. Kerr, to enforce which this action is brought. By

the terms of that contract, Kerr was to have the premises in question at the yearly rent of $600, payable half yearly in advance, for five years from April 1, 1859, and for another term of five years, on the same terms, if Kerr so desired, " and also with privilege on the part and behalf of the said party of the second part, (Kerr,) or his assigns, at any time during the three first years of said term to purchase said premises, by paying the said party of the first part all arrearages of rent then due and the sum of ten thousand dollars." " The said party of the second part agrees to pay, at the time and in the manner above mentioned, the said rent of six hundred dollars per year, and all taxes to become chargeable or assessed upon said premises, including highway labor during said term ; also the ten thousand dollars if he or his assigns conclude to purchase at the time above mentioned."

Kerr went into possession of the premises April 1, 1859, and he and his assignee, the plaintiff, his wife, have ever since continued in possession thereof. Elisha Purdy died intestate, February 28, 1860, leaving a widow, Phebe Purdy, who is still living, and the defendants, George W. Purdy, Sarah E. Purdy, Anna M. Conklin, Phebe Le Roy, wife of William Le Roy, and Hester D. Jackson, wife of Charles D. Jackson, his children and only heirs at law, all being of full age.

In September, 1861, Mrs. Jackson and Mrs. Le Roy, two of the five children and heirs at law of said Elisha Purdy, deceased, conveyed, in pursuance of the said contract between Elisha Purdy and said Robert A. Kerr, their interest in said premises to the plaintiff. The plaintiff, on the 24th of September, 1861, took a conveyance from John W. Cropsey, of his rights and privileges in and to said premises. Prior to April 1st, 1862, said Robert A. Kerr built a house, set out fruit trees, grape vines, antwerp berries, built docks and made other permanent improvements upon said premises to a considerable amount. Some time before the first day of April, 1862, Robert A. Kerr made arrangement with Hon. J. F.

Barnard, of Poughkeepsie, for the money to pay the contract price for the purchase of the premises in question, and a day or two before the said first day of April, 1862, Judge Barnard got $10,000 in gold for said Kerr for such purpose, and he told Kerr to go to the defendants and see if they would accept the money and give deed ; that if they refused to accept the money there would be no use in his (Barnard's) going down with the gold. That his going down with the money would depend on their willingness to convey. Kerr went to see the defendants as directed by Judge Barnard, returned and reported to Barnard what had transpired between him and the defendants, and the judge in consequence did not deem it necessary to go down with the gold and make a formal tender. Kerr, when sent by Barnard to see the defendants George W. Purdy, Sarah E. Purdy, and Mrs. Conklin, took with him Daniel Van Arsdale. They went to the residence of G. W. and Sarah E. Purdy, and only saw George W. but had some conversation with Sarah. To prove what took place at that interview, Van Arsdale was sworn as witness on the part of the plaintiff, who testified, substantially, to an offer to pay the purchase money and the rent, and to a refusal by the heirs to give the deed. Robert A. Kerr was offered as a witness on the part of the plaintiff before G. W. Purdy was sworn, and also after Purdy had been examined, as to what had occurred at the interview between him and G. W. Purdy on the 31st of March, 1862. The referee ruled in both instances that he could not be sworn or examined in the case for any purpose whatever, to which rulings the plaintiff excepted. George W. Purdy and Sarah E. Purdy were sworn as to the circumstances of this interview. Their testimony tends, on the whole, to show that the offer of the money by Kerr was not absolute, and that he wanted the deed before paying the purchase money. From G. W. Purdy's, Kerr and Van Arsdale went to the residence of Mrs. Conklin, but were not permitted to see her ; they did see her husband, to whom Kerr told his business. According to Van Arsdale the offer to pay and refusal to give a

deed, were repeated here at Purdy's. Isaac Conklin was sworn on the part of the defendants, who testified, among other things : " I told her " (Mrs. Conklin) " Mr. Kerr came to purchase her share of the property. She asked if he had got the money ? I said no, he *wants to get the deeds ready and then he will have the money ;*" and also on cross-examination : " He said he could get the money ; *I supposed it was ready the way he talked ; I told her Kerr said he had made arrangements for the money if we would get the deeds ready."* Mrs. Conklin testified : "I had no interest in the Cropsey deeds, nor had mother released her dower to the heirs, nor agreed to do it ; nor had I arranged to pay the mortgage."

On the next day after this attempt to get the defendants to convey their interests in the premises, April 1st, 1862, when six months rent would have been due the defendants if Kerr continued to occupy the premises as tenant of defendants, George W. Purdy called upon Robert A. Kerr and the plaintiff and demanded such rent. They both refused to pay rent and said they owned the property, and they have been in possession ever since under such claim of ownership.

On the 15th day of August, 1861, George W. Purdy, with the advice and consent of the other defendants, commenced an action for partition of these premises against the other heirs, by filing notice of *lis pendens,* and service of summons on Sarah E. Purdy. The summons was not served upon Le Roy and wife and Jackson and wife till in May, 1862 ; they, at the request of Kerr, defended, putting in an answer, setting up Kerr's right to a deed and readiness and willingness to accept it. In August, 1864, before the determination of the preceding action, the defendants commenced another action for partition of same premises, making Robert A. Kerr and the plaintiff defendants. They defended, answering that the plaintiff, by an assignment of the contract between R. A. Kerr and Elisha Purdy, deceased, to the plaintiff, and all of said R. A. Kerr's rights under it, which assignment was

made June 5th, 1863, was entitled to a deed and was the owner of the premises, &c.

The defendants, in February, 1865, assigned to the defendant George W. Fenton, their alleged claims against the plaintiff for the use of the premises, its rents, issues and profits, &c. who, in March, 1865, brought an action against the plaintiff for an accounting, and she put in an answer to the complaint in such action, setting up her right to a conveyance of the premises, &c. After taking considerable testimony in the partition suit brought against the plaintiff, this action was commenced on the 5th day of September, 1865, and referred to John Thompson, Esq. who made a report therein in favor of the defendants, on the sole ground as stated in the report, " that time is of the essence of the contract." " The time is made essential both in the covenant of the lessor and in the covenant of the lessee," and " it was by the payment or tender of the money that his (Kerr's) conclusion to purchase is to be manifested." To this report the plaintiff excepted, and from the judgment entered thereon, he appealed.

*F. L. Westbrook,* for the appellant.

*S. W. Fullerton,* for the respondent.

*By the Court,* HOGEBOOM, J. I think this judgment should be reversed and a new trial granted therein for the following among other reasons :

1. Kerr had a clear right at any time on or before April 1, 1862, to purchase the premises by paying $10,000 for them, and all arrearages of rent.

2. Prior to the 31st of March, 1862, he, or the plaintiff with his consent, had made an absolute purchase and obtained the title of *two* of the five heirs of Elisha Purdy. There is some plausibility in saying that this was a *part performance* on his part and on the part of the persons who together represented Elisha Purdy after his decease, showing

an unequivocal election on the part of Kerr to purchase the property, and a recognition by them of such right, which would without any further tender entitle him to file a bill for specific performance. But I have not particularly examined the question, and am rather inclined to think that by the death of Purdy the interests of the heirs became severed and Kerr was obliged to purchase of each separately.

3. Although Kerr did not on the 31st of March make a strict tender of the money to the three remaining heirs, he offered to pay — at least evinced his willingness to pay — the purchase money and the back rents, and his desire to obtain a deed of the premises. The testimony of Van Arsdale shows a sufficient offer of the money and an unqualified refusal to execute a deed, to make a strict tender necessary.

Perhaps the preponderance of testimony qualifies to some extent the testimony of Van Arsdale, but the whole testimony recognizes his willingness and desire to pay the money on receiving the deed, and his election to make the purchase.

4. It is sufficiently plain that Kerr *supposed* he had done enough, on the 31st of March, to entitle himself to a deed. The referee so says in his opinion. It is obvious that he meant to do so, from the fact that he had got Judge Barnard to provide him with $10,000 in gold to be used, if necessary, in making a tender; which he would have used on the first of April, if he had not supposed the occurrences of the day previous made it unnecessary. Judge Barnard, his counsel, must have supposed the same thing; otherwise he would have gone with him on the first of April to make the tender.

After the first of April, Kerr and wife claimed to be *owners* of the premises, and no longer lessees.

It is further obvious that he meant to purchase, from his making permanent improvements on the premises to the value of several thousand dollars.

5. There is strong reason to believe a *tender* would have

Kerr *v.* Purdy.

been wholly unavailable to induce the heirs to execute a deed. One or more of them had previously declared their determination not to execute a deed, and their belief that they were not obliged to. And I think it on the whole a fair inference from the testimony that a deed from the whole of them could not have been obtained, even if an absolute tender had been made.

6. I think, further, the facts show that the premises were incumbered by a dower right and by a mortgage, and therefore that a strict tender was unnecessary.

7. The delay in bringing this suit is sufficiently expressed by the continued and uninterrupted avowal of ownership by the Kerrs after the first of April—by their exclusive possession of the premises since, under claim of ownership, and refusal to pay since that time—by the commencement and pendency of the partition suits—and by the *absence* of any *change* in the condition or interests of the Purdys in the property. All these are either found by the referee, or are apparent from the testimony, and together show that the defendants will receive no further detriment from sustaining this action now than if it had been commenced at an earlier period.

8. Under these circumstances the plaintiff institutes this action for the specific performance of the contract—offering to pay the purchase money and the arrearages of rent. I think the offer is in time, and that she is entitled to a decree for that purpose. If she or her husband has failed before suit to make a sufficient tender or offer, that may be taken into consideration in equitably adjusting the costs. I think *time* was not so much of the essence of the contract as to bar this right, and that a strict tender was made unnecessary, or would have proved unavailable, in view of all the facts and circumstances proved in the case.

I am of opinion that the judgment should be reversed, and a new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, September 18, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]