THE FALLS OF NEUSE MANUFACTURING COMPANY v. THOS. HENDRICKS.

*Action to Recover Land—Executory Contract—Specific Performance—Possession—Bond for Title—Defective Deeds and Contracts—Memorandum in Writing—Parol Evidence to Connect Writings.*

1. Possession of land under a bond for title is notice of the equities of which it is evidence.

2. A bond for title "for thirty acres of land, being a portion of a tract formerly owned by Reuben Deaver and known as the 'Deaver Tract,' adjoining the lands of one Murray and two other parties—naming them—beginning on a white-oak, corner of the said Deaver and Murray land," it appearing also that it was, at most, only a portion of the Deaver tract, is very ambiguous, and—*quære?* if it can be aided by *extrinsic* evidence.

3. Such defect is not remedied by a *subsequent* survey.

4. Defective deeds (where there is an evident mistake in running the lines), may be cured by survey made at the time of their execution and delivery. As to defective executory contents, *quære?*

5. When, in aid of such defective agreement a receipt is shown, it must be connected with the agreement by internal evidence, not by parol.

6. A receipt, "I have received of T. H. on his land where he now lives," certain sums of money named, is, of itself, without connection with other papers, a sufficient memorandum in writing under 29 Car., II, to warrant specific performance, if the land can be sufficiently identified by evidence *aliunde.*

This was a CIVIL ACTION to recover land, tried at the August Term, 1889, of BUNCOMBE Superior Court, before *Clark, J.*

The plaintiffs introduced deeds conveying to them, and those under whom they claimed, the lands described in the complaint, in fee.

Defendant introduced the following paper-writing, recorded in 1871:

" I bind myself in the sum of six hundred dollars to make to Thomas Hendricks a good and sufficient deed for thirty acres of land, being a portion of a tract of land formerly owned by Reuben Deaver, and known as the Deaver tract, joining Hugh Johnson's, Wm. Johnson's and the Robert A. Murray place, beginning on a white oak, the corner of the said Deaver and Murray land, whenever he pays to me the just and full sum of six hundred dollars.

WILY KNIGHT.                          WM. L. HENRY.
1st January, 1867."

The plaintiffs objected to the introduction of this paper in evidence, but the Court admitted it, and the plaintiffs excepted.

The defendant then introduced himself as a witness, and swore:

" I paid W. L. Henry for the land described in the bond for title, and went into possession when the bond was given." (Plaintiff objected to this testimony, which was admitted by the Court, and plaintiff excepted.)

Defendant further swore: " Some time during the year 1868, after the bond for title was made to me by W. L. Henry, Bryson surveyed out the thirty acres and marked it. W. L. Henry was present at the time. The thirty acres described in the bond for title adjoins Wm. Johnson on the north, Hugh Johnson on the east, the Robert A. Murray place on the west, the balance of the ' Deaver tract' on the south. The ' Deaver tract' of land contains fifty-four acres, and is a little longer one way than the other. It is bounded on the north by the William Johnson land, on the east by the Hugh Johnson land, and on the south and west by the Robert A. Murray place."

The plaintiffs objected to the introduction of this evidence, but the Court admitted it, and the plaintiffs excepted.

(At this point in the examination of the witness a plat was introduced, which is hereto attached, marked " C," and made a part of this statement of the case, and is to go with it to the Supreme Court.)

On cross-examination, the witness stated that the " Deaver tract" of land was correctly laid down upon the plat, and was joined by William Johnson on the north, Hugh Johnson on the east, and the Robert A. Murray place on the west and south, as is written on the same in ink.

The witness further swore that the southern line of the thirty acres claimed by him in his amended answer was not located or known until the land was surveyed, soon after the bond for title was made ; and that they ran down the line of the Deaver land and the Hugh Johnson place southward a sufficient distance to make thirty acres, by running a straight line due west to the western line of the Deaver land, or east boundary line of the Robert A. Murray place,

thence running back north on the line of the Murray land
to the white-oak; that W. L. Henry was present at the sur-
vey, and accepted it as the proper location of the land.

The defendant then introduced W. L. Henry, who testi-
fied that the defendant paid him six hundred dollars for the
land described in the bond for title; that he paid it in stock,
a gold watch, and that witness owed the defendant some
money, and the defendant returned witness' note, which was
about one hundred dollars.

The defendant then offered in evidence said witness'
receipt, the execution of which the witness acknowledged,
and which is in words and figures as follows:

" I have received of T. Hendricks on his land where he
now lives, one horse, $150; cattle, $100; one watch, $100;
two-horse wagon and bed, 40 or 50 dollars, and possibly
other payments, amounting in all to five hundred dollars.
I only now remember the above items.

(Signed)        WM. HENRY.

8th Sept., 1867."

The plaintiff objected to the introduction of this receipt,
but the objection was overruled, and the plaintiff excepted.

Witness then testified, without objection, that he had sold
to defendant thirty acres, embracing the northern end of
the Deaver tract, which he pointed out on the map to the
jury; that the land was afterwards surveyed and marked
off in the same spring, and the whole money paid before
September, 1867.

That he was present, and that the Sheriff gave notice, at
the sale, of the defendant's bond for title.

Good Roberts, another witness for the defendant, testified
that the land in dispute was covered by the Sheriff's deed
to the plaintiff; that he knew of the sale and bond for title
to defendant Hendricks, before he sold to plaintiff; and that

Judge Henry, one of the parties from whom plaintiff bought, also knew of the same before he sold to the plaintiff, but Henry did not know of this until after Sheriff's sale, but all parties knew of the defendant's possession at the time of the said sale, but did not know whether defendant was a tenant or not.

Rufus Miller testified for the plaintiff that he was present when the defendant bought the land from W. L. Henry, and that the receipt shown to W. L. Henry was correct, and that Hendricks, the defendant, went into immediate possession; that he was present when the survey was made by the plaintiff of the Sulphur Springs lands, and that Mr. Plumadore, the general agent for the plaintiff, disclaimed any interest in the land claimed by defendant, and the surveyor did not run around it; that Plumadore was the agent of the plaintiff and was in charge of this property, offering it for sale.

The plaintiff objected to any declaration of Plumadore as agent concerning the property. The objection was overruled and the Court admitted the evidence, not as an estoppel, but as some evidence to give to the jury as to whether the plaintiff had notice of defendant's claim. The plaintiff excepted.

This witness testified upon cross-examination that the rental value of the land was about $32 per year, if rented, and the timber land was worth about $10 per acre.

W. L. Henry was introduced by the defendant, and he testified that Plumadore was the general agent of the plaintiff and had charge of their lands; that Plumadore said to witness that the plaintiff did not claim the land in dispute, and once had the suit taken out of Court, but that the lawyers put it back.

The defendant Hendricks, introduced in his own behalf, testified that Plumadore, the plaintiff's agent, since this suit commenced, offered to buy a part of the land in controversy

from him, and stated to defendant that he had written to R. Y. McAden, who had the principal management of the business of the plaintiff, the Falls of Neuse Manufacturing Company, and advised him to take the case out of Court. (Admitted, not as evidence of any statement of McAden, but to show knowledge in Plumadore.)

Dr. Queen was introduced, and he testified that Plumadore told him that the plaintiff wanted to drop the suit, and it would have been dropped at the Court previous, but the lawyers would not do it, because they wanted to sue Judge Henry on his warranty or bond to the plaintiff, and were forced to terminate this case before they could do so.

Newton Taylor also testified that the said Plumadore had proposed to swap other land to the defendant Hendricks for that in controversy in this case, and that he had asked him (witness) to see Hendricks, and make the trade for part of the land for him. Plumadore at the time stated that he was acting for the plaintiff, and wanted to make an exchange for the company. This, in substance, is the testimony from the notes of the Court.

At the close of the testimony, it was admitted by both the plaintiff and defendant that the land in controversy was a part of the Deaver tracts, included in the Sheriff's deed of January 1, 1867, and that the Sheriff's deed of September 28, 1872, did not cover any part of either of these tracts, and was not in controversy.

Among other things, the Court charged the jury that the description in the bond for title was such as could be made certain, and if they should find that W. L Henry, under whom the parties, plaintiff and defendant, claimed, executed the said bond for title, and soon afterwards the defendant entered into possession, and, with W. L. Henry, immediately caused the land to be surveyed, as stated in the defendant's reply, and marked the boundary lines, and has remained in possession of the said land, claiming it as his

own, such possession would be a notice to all the world of the defendant's equity for title against the said Henry, and if the plaintiffs purchased the said land while the defendant was in possession so claiming it, it is fixed in law with such notice, and purchased subject to his equity.

That if they should find that the defendant paid the purchase-money to W. L. Henry for the land, he would be entitled in law to specific performance of his bond for title with Henry, and the plaintiff, being fixed with notice of his equity, purchased subject to such equity.

That the plaintiffs, having shown title in W. L. Henry, by his Sheriff's deed, shifted the burden upon the defendant, and he must show, by a preponderance of proof, that he purchased the land in 1867 from W. L. Henry under the bond for title alleged, and that he caused the same to be surveyed, took possession and remained in possession, claiming the said land as his own at the time when the plaintiffs purchased.

To this charge the plaintiffs excepted.

*Mr. E. C. Smith*, for plaintiff.
*Mr. G. A. Shuford*, for defendant.

SHEPHERD, J.: There can be no question but that the possession of the defendant was notice of any equities which existed in his favor. *Edwards* v. *Thompson*, 71 N. C., 177; *Tankard* v. *Tankard*, 84 N. C., 286.

But we think that his Honor erred in holding that the thirty acres mentioned in the agreement to convey had been sufficiently identified.

While the writing is very ambiguous in its terms, it is, perhaps, susceptible of being aided by extrinsic evidence. If, for instance, the testimony had shown that the particular thirty acres were known as the "Deaver Tract," it would have been a sufficient identification to have warranted the

instruction given by the Court. So far from this being the case, the defendant himself testified that the thirty acres were "the balance of the Deaver tract"; from which it must necessarily be inferred that the said tract was one out of which the thirty acres were to be taken. This feature, therefore, being eliminated from the case, there remains nothing by which the *locus in quo* can be located; for by reference to the plat it will be seen that, according to the description, it may be laid off in several different ways. *Blow* v. *Vaughan* (decided at this term), and the cases cited.

Nor is the defect remedied by the subsequent survey and the marking of the lines. It may well be doubted whether such acts can, under any circumstances, aid a defective description of an executory contract to convey land, where, as with us, the doctrine of part performance is entirely repudiated. The furthest the Court has gone in this direction is in *Baxter* v. *Wilson*, 95 N. C., 137, where effect is given to the contemporaneous running and marking of lines and the establishment of corners for the purpose of correcting mistakes in the courses and distances called for in a deed, and by this means ascertaining the true intention of the grantor. This principle applies in cases where there is an evident mistake in the courses and distances given in the description, and not where, as in the present case, there is no such description at all. It could in no event avail the defendant, as the marking of the lines, &c., were not contemporaneous with the execution of the contract.

It is contended, however, that the agreement can be aided by the receipt given by W. L. Henry to the defendant in 1867. This would be so if the two papers could be connected without the aid of parol evidence. A valid contract, within the statute of frauds, "may be of one or many pieces of paper, provided the several pieces are so connected, physically or by internal reference, that there can be no uncertainty as to their meaning and effect when taken together.

But this connection cannot be shown by extrinsic evidence." *Mayer* v. *Adrian*, 77 N. C., 83.

Here there is no reference in either paper to the other, and they are entirely consistent with the idea that they relate to distinct and independent transactions. Although the receipt could not be so connected with the agreement, we are of the opinion that it was in itself a sufficient memorandum in writing to warrant specific performance, provided that the land could be specifically identified by evidence *aliunde*.

In *Farmer* v. *Batts*, 83 N. C., 387, the Court decreed specific performance upon the following receipt:

"Received of W. D. Turner $1,400 in full payment of one tract of land containing 193 acres, more or less, it being the interest in two shares adjoining the land of James Barnes, Eli Robbins and others. This 25th January, 1864."

This is substantially the same in its terms as ours, except that the payment is acknowledged to be in full. This difference does not alter its binding effect upon the vendor, as it is well settled with us that the consideration need not be set forth. *Miller* v. *Irvine*, 1 Dev. & Bat., 103; *Thornburg* v. *Masten*, 88 N. C., 293. To this effect also is *Gordon* v. *Collett*, 102 N. C., 532, where a simple receipt in part payment of a certain described lot of land was held sufficient. See also *Breaid* v. *Munger*, 88 N. C., 297.

These authorities, we think, fully sustain us in saying that the receipt is sufficient under 29 Chas., II.

No decree, however, for specific performance can be granted the defendant unless "his land where he now lives" (the descriptive words of the receipt) is fully identified by competent testimony. These words are clearly susceptible of being applied to a particular well-defined tract of land—*id certum est, quod certum reddi potest*—and if the defendant can supply the requisite proof, he will be entitled to relief.

While the answer was sufficiently general (except, perhaps, as to the date of the contract) to have comprehended the receipt as a defence, this aspect of the case was not presented to the jury. The action seems to have been tried upon the agreement alone, and as we are of the opinion that there was error as to this, there must be a new trial.

New trial.