W. E. BATEMAN v. E. B. HOPKINS.

(Filed 20 December, 1911.)

1. **Statute of Frauds—Contracts to Convey Lands—Memorandum—Writing Sufficient.**

   A memorandum held a sufficient contract to convey lands under the statute of frauds, reading as follows: "Received of B. $5 to confirm the bargain on the purchase of the farm on which I now live," dated and signed by the vendor.

2. **Statute of Frauds—Contracts to Convey Lands—Description—Identification of Lands.**

   A description of lands, the subject-matter of a contract to convey, as "the farm on which I now live": *Held*, to be sufficiently defined to enforce specific performance upon the identification of the *locus in quo.*

3. **Same—Consideration—Parol Evidence.**

   The consideration for the lands contracted to be conveyed need not be expressed in the written memorandum or contract required by the statute of frauds, and may be shown by oral evidence.

4. **Statute of Frauds—Contract to Convey Lands—Vendor and Vendee—Consideration.**

   In an action by the vendee against the vendor for specific performance of a contract to convey lands, it is not necessary that the written memorandum required by the statute of frauds set forth the obligation of the vendee to pay the purchase price, for by bringing his action the vendee agrees to perform the contract irrespective of the statute of frauds. It is only necessary that the memorandum be signed by the party to be charged, who is the defendant in this case.

BATEMAN *v.* HOPKINS.

5. Statute of Frauds—Contracts to Convey Lands—Specific Performance—Purchase Money—Tender—"Ready, Able, and Willing."

In an action to enforce against a vendor specific performance of his contract to convey lands, which he seeks to avoid upon the ground that it is unenforcible under the statute of frauds, it is not required, to maintain the action, that the plaintiff show a tender of the purchase price before commencing his action or for him to pay it into court; for it is sufficient if he has ever been ready, able, and willing to comply, on his part, with the terms and conditions which the contract imposes on him.

6. Same—Reasonable Time Decreed.

When specific performance of a contract is enforcible against the vendor of lands in the suit of the vendee, equity, looking to the adjustment of the rights .of the parties, may decree that the plaintiff pay the purchase money into the court and otherwise comply with his contract, within a reasonable time, to be fixed by the court, and .upon his failure to do so, his right to specific performance be denied and the action dismissed, and that if he does perform, on or before the last day named, the defendant execute a good and sufficient deed for the premises, properly acknowledged or proven, and deposit it with the clerk of the court, at a time to be named, to be delivered to the plaintiff, and when this is done, the money so deposited in court to be paid to the defendant.

7. Same—Appeal and Error—Notification in Decree—Costs.

When the trial court decrees that the vendor of lands make deed to the vendee and file it with the clerk of the court, and that the vendee pay into court the purchase money, without fixing a time in which it is to be done, in an action for specific performance of a contract this Court will direct, when it appears that it should be done, that the order be modified by the lower court so that such reasonable time be specified.

APPEAL from *O. H. Allen, J.,* at Spring Term, 1911, of TYR-RELL.

This action was brought to compel the specific performance of a contract to convey land, by the vendee against the vendor. The memorandum is as follows:

Received of W. E. Bateman $5, to confirm the bargain on the purchase of the farm on which I now live. This 8 . January, 1910.                              (Signed) . E. B. HOPKINS.

BATEMAN *v.* HOPKINS.

The defendant alleged that the memorandum was as follows: "Received of W. E. Bateman $5, to confirm the bargain on the purchase of the farm on which I now live, and if I fail to make the said W. E. Bateman a deed, then I will pay his $5 back and $5 more, making in all $10."

The jury returned the following verdict:

1. Did the defendant execute the contract set out in the complaint? Answer: Yes.

2. Did the plaintiff Bateman tender the defendant Hopkins the $1,000, part purchase money of the lands described in the complaint? Answer: No.

3. If not, was it waived by defendant Hopkins? Answer: Yes.

4. Was the plaintiff Bateman ready, willing, and able to pay off the indebtedness of said Hopkins to J. C. Meekins, Sr., and to pay the defendant Hopkins, in addition, the $1,000 balance of the purchase money? Answer: Yes.

5. What is the yearly rental value of the same? Answer: $150.

The court, after refusing a new trial, rendered judgment upon the verdict for the plaintiff, and defendant appealed.

*W. M. Bond, I. M. Meekins, and M. H. Tillett for plaintiff.*
*M. Majette and E. F. Aydlett for defendant.*

WALKER, J. It will be seen that upon the issue as to the contents of the memorandum the jury decided in favor of the plaintiff, and we must, therefore, consider the case with reference to the contract as it is alleged in the complaint. We do not entertain any doubt as to the sufficiency of the memorandum under the statute of frauds, as it has been construed in our decisions. "Every deed of conveyance (or contract) must set forth a subject-matter, either certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers." *Gaston, J.,* in *Massey v. Belisle,* 24 N. C., 170. In *Carson v. Ray,* 52 N. C., 609, the deed described the land as "My house and lot in the town of Jefferson, Ashe County, N. C.," and the Court, with reference to this description, said: "A house and lot, or *one* house and lot in a particular town, would not do, because too indefinite on the face

of the instrument itself. See *Plummer v. Owens,* Busb. Eq.,
254; *Murdock v. Anderson,* 4 Jones' Eq., 77. But 'my house
and lot' imports a particular house and lot, rendered certain by
the description that it is one which belongs to me, and upon the
face of the instrument is quite as definite as if it had been de-
scribed as the house and lot in which I now live, which is
undoubtedly good." See *Blow v. Vaughan,* 105 N. C., 199;
*Farmer v. Batts,* 83 N. C., 387. To the same effect is the lan-
guage of the Court in *Manufacturing Co. v. Hendricks,* 106
N. C., 485: "No decree, however, for specific performance can
be granted the defendant unless 'his land where he now lives'
(the descriptive words of the receipt) is fully identified by
competent testimony. These words are clearly susceptible of
being applied to a particular well-defined tract of land—*id
certum est, quod certum reddi potest*—and if the defendant can
supply the requisite proof, he will be entitled to relief."

It is further objected that the consideration is not expressed
in the memorandum, but it is well settled that this is not
required, and it may be shown by oral evidence. *Miller v.
Irvine,* 18 N. C., 103; *Thornburg v. Masten,* 88 N. C., 293;
*Manufacturing Co. v. Hendricks, supra; Hall v. Misenheimer,*
137 N. C., 183. In *Gordon v. Collett,* 102 N. C., 532, a simple
receipt of a sum of money, in part payment of a certain tract of
land described in the paper, was held to be sufficient. There was
evidence in the case identifying the land and fixing the amount
of the consideration. This action is by the vendee against the
vendor. It was not necessary, therefore, for the memoran-
dum to set forth the obligation of the vendee to pay the price.
There is a difference, as we have often said, between the consid-
eration necessary to support a contract, which was required at
common law before the statute of frauds was adopted and is still
required, and the promise of the vendee to pay the purchase
money, which must be stated in the writing in order to bind
him, if he is sued and is, therefore, the party to be charged. *Hall
v. Misenheimer, supra; Brown v. Hobbs,* 154 N. C., 544. "Un-
der the statute of frauds a contract, in writing, to sell land,
signed by the vendor is good against him, although the correla-
tive obligation of the buyer to pay the price is not in writing,

and cannot be enforced against him." *Mizzell v. Burnett,* 49 N. C., 249. See, also, *Improvement Co. v. Guthrie,* 116 N. C., 382. As the vendee is suing in this case, he agrees to perform the contract and therefore waives the benefit of the statute or rather is not seeking to rely upon it.

The overshadowing question in this case is whether the plaintiff has made a proper tender or been relieved therefrom by the conduct of the defendant, and if so relieved, whether he has been ready, willing, and able to perform his part of the contract. As to the first question, the jury have found, upon sufficient evidence, as we think, that the defendant waived a tender of the purchase price by the plaintiff, not only by his conduct, but by denying the contract and refusing to comply with its terms. The denial and refusal continued to the very time of the trial. The court did not order a sale of the land, but required the defendant to execute a deed for the same and deposit it with the clerk of the court, and the latter to deliver it to the plaintiff upon his paying into court the money due under the contract and otherwise complying fully with its terms and conditions on his part. Where the vendor has repudiated the agreement, thus making it appear that if the tender were made, its acceptance would be refused, tender or offer of payment by the vendee before suit is unnecessary. Equity does not require a useless formality. 36 Cyc., 705. In general, the rules of equity concerning the necessity of an actual tender are not so stringent as those of the law. The following are special rules upon the subject, which seem to be settled:

"1. An actual tender by the plaintiff is unnecessary when, from the acts of the defendant or from the situation of the property, it would be wholly nugatory. Thus, if defendant has openly refused to perform, the plaintiff need not make a tender or demand; it is enough that he is ready and willing and offers to perform in his pleading. *Hunter v. Daniel,* 4 Hare, 420, 433; *Mattocks v. Young,* 66 Me., 459, 467; *Crary v. Smith,* 2 N. Y., 60, 65; *Kerr v. Purdy,* 50 Barb., 24; *Maxwell v. Pittinger,* 3 N. J. Eq., 156; *White v. Dobson,* 17 Gratt., 262; *Brock v. Hidy,* 13 Ohio St., 306, 310; *Brown v. Eaton,* 21 Minn., 409,

411; *Gill v. Newell*, 13 Minn., 462, 472; *Diechmann v. Diech-mann*, 49 Mo., 107; *Gray v. Dougherty*, 25 Cal., 266, 280, 281.

"2. Where the stipulations are mutual and dependent—that is, where the deed is to be delivered upon the payment of the price—an actual tender and demand by one party is necessary to put the other in default, and to cut off *his* right to treat the contract as still subsisting. *Hubbell v. Von Schoening*, 49 N. Y., 326, 331; *Leaird v. Smith*, 44 N. Y., 618; *Van Campen v. Knight*, 63 Barb., 205; *Irvin v. Bleakley*, 67 Pa. St., 24, 28; *Crabtree v. Levings*, 53 Ill., 526."

Where time is essential or of the essence of the contract, the tender and demand must be made on the day named, and a *fortiori* where it is stipulated that if tender and demand are not made by one of the parties at the time specified, the other party may treat the contract as at an end.

When time is not essential, another rule has been adopted in a group of decisions, which is said to be more in accordance with principles of equity, viz., that in such contracts an actual tender or demand by the plaintiff prior to the suit is not essential. It is enough that he was ready and willing, and offered, at the time specified, and even that he is ready and willing at the time of bringing the suit, unless his rights have been lost by laches, and that he offers to perform in his pleading. The plaintiff's performance will be provided for in the decree, and his previous neglect will only affect his right to costs.

The foregoing principles are considered in 4 Pomeroy's Eq. Jur. (3 Ed.), sec. 1407, and note, at p. 2776, where a full citation of the authorities will be found. See, also, Pomeroy on Contracts, secs. 360 to 364. The general rule is thus stated by Pomeroy in section 1407: "The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has done or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms."

But in this case the tender of the money was waived by the defendant, and the jury have found that the plaintiff was ready, able, and willing to comply with his part of the contract. If he was not, in the sense that he did not have the money under his control and within his reach, so that he could put his hands on it and pay it over to the defendant at any moment, the defendant has not put him in default by tendering a deed for the land, thus "cutting off plaintiff's right to treat the contract as still existing," as said above. How can the defendant be hurt, in that respect, by the judgment of the court? The payment of the money is assured, for the plaintiff must pay it into court before he is entitled to receive the deed. This subject was fully discussed in *Harris v. Greenleaf*, 117 Ky., 817, and also reported, with an elaborate and useful note, in 4 Am. and Eng. Anno. Cases, at p. 849. The Court there held that it was not necessary to allege a tender or to bring the money into court upon filing the bill, and said: "In *Hunter v. Daniel*, 4 Hare, 420, a case very much like this one, in lacking a tender by the plaintiff before suit brought for specific performance, the argument was submitted that payment was a condition precedent to the right of the plaintiff to call for the execution of the agreement, and it was argued that the bill could not properly be filed before the plaintiff had, out of court, fully performed his agreement. The Court responded: "The general rule in equity certainly is not of that strict character. A party filing a suit submits to do everything that is required of him, and the practice of the court is not to require the party to make a formal tender where, as in this case, from the facts stated in the bill, or from the evidence, it appears that the tender would have been a mere form and that the party to whom it was made would have refused to accept the money?" The same ruling was made in *Webster v. French*, 11 Ill., 254, where the Court said: "The result of my examination of this subject clearly shows that the court of chancery is not bound down by any fixed rule on this subject, by which it will allow the substantial ends of justice to be perverted or defeated by the omission of an unimportant or useless act, which nothing but the merest

technicality could require. The money may, at any time, be ordered to be brought into court, whenever the rights of the opposite party may require it; but while he is insisting that the money is not his, and that he is not bound to accept it, it would seem to be a matter of no great consequence to him whether it is in the custody of the court or not. The court possesses a liberal and enlarged discretion on this subject, by the proper exercise of which the rights of all parties may be protected. . . . It is time enough for the party to bring the purchase money into court when he is called upon to do so." *Lord Chancellor Hardwick* said in *Vernon v. Stephens,* 2 P. Wms., 66: "If the defendant has his money and interest and costs, he will have no reason to complain of having suffered; on the contrary, it would be a very great hardship on the plaintiff to lose all the money he has paid. Lapse of time in payment may be recompensed with interest and costs. And as to these agreements, they were all intended only as a security for payment of the money, which end is answered by the payment of principal, interest, and costs."

The weight of authority is that it is unnecessary for the purchaser to pay the money into court at the time he commences his suit. It is sufficient for him to plead a tender of the purchase money and to offer by his bill to bring in his money whenever the same is liquidated and he has a decree for performance. *Johnson v. Sukeley,* 2 McLean (U. S.), 562; *Mason v. Atkins,* 73 Ark., 491; *Kerr v. Hammond,* 97 Ga., 567; *Webster v. French,* 11 Ill., 254; *Hunter v. Bales,* 24 Ind., 576. See, also, *Lamprey v. St. Paul, etc., R. Co.,* 86 Minn., 509; *Birdsall v. Waldron,* 2 Edw. (N. Y.), 315.

The purchaser, if he offers in his bill to perform, may maintain a suit for specific performance, though he made no tender of the purchase money before the suit, where he shows that the vendor would have refused the tender if it had been made. *Stewart v. Cross,* 66 Ala., 22; *Jenkins v. Harrison,* 66 Ala., 345; *Root v. Johnson,* 99 Ala., 90; *Dargin v. Cranson,* 12 Colo. App., 368; *Ebert v. Arends,* 190 Ill., 221; *Tyler v. Onzts,* 93 Ky., 331; *Deichmann v. Deichmann,* 49 Mo., 107; *Christian-*

*burg v. Aldrich,* 30 Mont., 446; *Connely v. Haggerty,* 65 N. J. Eq., 596; *Selleck v. Tallman,* 87 N. Y., 106.    In *Cheney v. Libby,* 134 U. S., 68, it was held that the discretion which the court has to decree specific performance may be controlled by the conduct of the party who refuses to perform the contract because of the failure of the other party to strictly comply with its conditions.    If the vendor notifies the purchaser that he regards the contract as forfeited, and that he will not receive any money from him, the latter is not required, as a condition of his right to specific performance, to make tender of the purchase price.    It is sufficient if he offer in his bill to bring the money into court.    In a case involving the question of tender of performance by the party seeking relief in equity, and analogous to this, the Court said: "This being a proceeding in equity, will be governed by rules and principles prevalent in those courts where relief of that character is prayed.    Among those rules, having application here, is one to be presently mentioned.    The true meaning of the rule whose frequency of invocation would seemingly argue a better knowledge of its import, that 'he who seeks equity must do equity,' is simply this: that where a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms.    These terms will be imposed 'as the price of the decree it gives him.'    The rule 'decides nothing in itself,' for you must first inquire what are the equities which the plaintiff must do in order ta entitle him to the relief he seeks.    .   .   . The above are only a few out of a large number of examples which might be cited in illustration of the rule referred to, which finds its application, not in questions of pleading, nor by what the plaintiff offers to do therein, but in the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are imposed as a condition precedent to equitable relief granted."    *Whelan v. Reilly,* 61 Mo., 565. See, also, *Campbell v. Lombardo,* 153 Ala., 489.

    The general and clear result of the best considered authorities is that the vendor, especially when he has been and is in default himself, or when he has denied or repudiated the contract, cannot insist upon the failure to tender the money or

to bring it into court for the purpose of performance, but will be left to such protection as the court can afford in the decree, which will be shaped so as to carry out the purposes of the contract fairly and equitably, without any great regard for technicalities, the object being to do justice to both parties without unnecessarily sacrificing the rights of either. This is the wisest and safest doctrine.

In this case, the defendant will be fully protected in the enjoyment of every right he should have by requiring the payment of the money into court for his benefit, before he is called upon to part with his deed. This is all he has a right to expect under the circumstances. The decree in this case conforms to established precedents, except, perhaps, in one respect, and that objection to it can be cured by amendment. It should have set a time, say sixty days after the adjournment of the court, for the payment of the money into court by the plaintiff, and then directed, if it was not paid by the expiration of that time, the suit should be dismissed with costs, which, of course, would deny to the plaintiff any right to an enforcement of the contract, by reason of his own default after notice and reasonable time to pay or perform his part of the agreement. The plaintiff must not have any order for the sale of the land, but in such a case as this should be made to perform strictly according to the terms of the contract. If he asks equity, he must do equity. The Court, in *Webster v. French, supra,* referring to this matter, said: "In *Burke v. Boquet,* 1 Dessaus, 142, which was a bill for a specific performance, it does not appear that either a tender or a deposit in court of the purchase money was made, and yet it was decreed that it be referred to the master to state and report what is the balance due on the contract in the bill mentioned, and that on the payment thereof, with interest, and of the costs of the suit, within one month from this day, the defendant execute title to the complainant in the bill. From the brevity with which this case is reported, we cannot learn its particular circumstances, but the decision itself shows that the suit might be maintained without a deposit of the purchase money. The suit of *Louthler v. Anderson,* 1 Bro. Ch. R., 347, was of the same character, and upon a

rehearing before the chancellor, 'his lordship varied the decree, in the manner prayed, by ordering it to be referred to the master to appoint a short day for the payment of the money, and to compute subsequent interest till that time, and if, upon a tender of a sufficient conveyance, the principal money and interest should not then be paid, the plaintiff's bill to be dismissed (as against defendant), with costs.' Here is the same case, of time given to the complainant, even beyond the hearing, for the payment of the purchase money." And in *Whelan v. Reilly, supra,* the Court thus refers to the subject: "The objection was made, in *Quin v. Brittain* (1 Hoff. Ch., 353), that in the bill (which was substantially a bill to redeem) there was no offer to pay the amount due. But it was held that this was not essential, and the reasons given were, that on such a bill no decree would go for the payment of the amount personally; that if the amount found due were not paid, there would be a decree for dismission of the bill, which would operate as a foreclosure. (*Bishop of Winchester v. Paine,* 11 Vesey, 194.)"

The other exceptions of the defendant have received our careful scrutiny and found to be without merit, in view of our decision upon the principal matters. We must not be construed as implying that there was error in any of the rulings to which exceptions were taken; but if there was, it does not call for a reversal of the judgment.

The court below will modify its decree substantially as follows: Require the plaintiff to pay the money due into court and otherwise to comply with his part of the contract, within a reasonable time, to be fixed by the court, and, upon his failure to do so, his right to specific performance to be denied and the action dismissed; but if he does perform, on or before the last day named, that the defendant execute a good and sufficient deed for the premises, properly acknowledged or proven, and deposit it with the clerk of the court, at a time to be named, to be delivered to the plaintiff, and when this is done, the money so deposited in court shall be paid to the defendant. As the defendant is in default, the court properly taxed him with the costs.

No error.