Gaston, Judge.
 

 Upon the best consideration which we have been able to give to this case, we are of opinion that a portion of the testimony offered by the plaintiff on the trial, and objected to by the defendant, was improperly received.
 

 The fact in contestation was, whether the libel in question was written by the defendant or not. There was no direct evidence of the fact, and the plaintiff undertook to establish it by proving that the handwriting of the libel corresponded with
 
 *19
 
 the character of the defendant’s writing. For this purpose, he introduced, amongst others, a witness, Mr. Anderson, whose judgment, because of his skill and experience in subjects of this kind, was represented as entitled to great confidence. This witness had never seen the defendant write, and had been furnished with no means ofjudgingof the character of his handwriting, further than that he had once received a letter purporting to have been written by the defendant, and in consequence of its abusive character, had paid much attention to its handwriting. To furnish, then, a foundation for getting the judgment of this witness upon the character of defendant’s handwriting, another witness was permitted to testify that the defendant had admitted that
 
 he
 
 wrote the abusive letter to Anderson; and thereupon the latter was received to declare that, from his judgment of handwriting, the libel was written by the same person who wrote the letter. In a previous part of the trial, a witness, Mr. Alexander, had testified to the general character of the defendant’s handwriting, derived from seeing him write a contract with himself. This contract was exhibited to the witness, Anderson, and he testified that the contract and the libel were written by the same person. Now it may be, that this evidence did not prejudice the truth, or it may have actually contributed to its elucidation in the case under trial; but we feel a strong conviction that the admission of it went beyond the bounds of what has been heretofore allowed with us in disputed questions of handwriting, and apprehend that if generally allowed, it would lead to much legal inconvenience, and tend to the perversion of justice. Upon
 
 this
 
 we rest our decision.
 

 A question very nearly resembling the present, has been recently discussed in the Court of King’s Bench in England, in the case of
 
 Doe on dem. of Mudd
 
 v.
 
 Suckermore,
 
 5 Adol. & Ellis 703 (31 Eng. Com. Law Rep. 406.) All that learning and ingenuity can contribute to the elucidation of it, may be there discovered.
 

 Testimony as to handwriting, founded on what is properly termed comparison of hands, seems to be now generally exploded. The testimony now received, is that of the belief
 
 *20
 
 of a witness as to the identity of character between the writing in question, and the exemplar of the party’s handwriting in the mind of the witness, which exemplar has been formed Up0n previous sufficient means of observation. The enquiry is, what does the law hold to be these adequate and sufficient means of observation? The rule, as heretofore observed with us, has been, that the witness must either have seen the party write, or have obtained a knowledge of the character of his writing, from a correspondence with him upon matters of business, or from
 
 transactions
 
 between them, such as having paid bills of exchange for the party for which he has afterwards accounted. 2 Star, on Evid. 372. These
 
 prima facie
 
 have been held to be sure means of acquiring knowledge — but means short of these have been deemed inadequate to afford the opportunity of knowing a man’s handwriting. It may be asked, why this precise distinction? What difference is there between the knowledge of handwriting acquired from observing writings proved to be those of a party, and observing those which the witness has himself seen written? Do not they all, if really written by him, furnish precisely the same means of judging to the witness? Waiving other answers, we say, in the first place, that it is indispensable to the uniform administration of justice that there should be some
 
 definite
 
 rule for ascertaining when the witness’s belief —for it is but belief — has been formed under such circumstances as entitle it to confidence; and whenever the rule has been once fixed, it is dangerous to depart from it because of speculative notions. But we further answer that, if it be admitted that all instruments written by a man furnish the same means of acquiring a knowledge of the character of his writing, (an admission which is not to be made without many qualifications,) yet it is first necessary that it shall be
 
 known
 
 that they were so written, before any opinion founded on them, can be entitled to the least confidence. In the cases put by the rule, the law supposes,
 
 prima facie
 
 at least, that this preliminary matter» of fact is known — but, in all other cases, it is to be proved. How is this to be done?— By testimony — direct or indirect» — .met, opposed, weakened, strengthened, repelled or established by other testimony—
 
 *21
 
 and this upon a number of collateral issues, of which no previous intimation had been given — embarrassing the jury, surprising the parties, and unfitted to the simplicity and distinctness which should characterise the trial of facts by the country. The case before us, is an illustration of the necessary consequences of a relaxation of the rule. The question of fact by whom
 
 the letter
 
 was written, is as fiercely contested, as the fact directly in issue upon the writing of the
 
 libel
 
 — and yet
 
 that
 
 question must be decided in the affirmative, before much of the evidence upon
 
 this
 
 ought to be considered by the jury. Nor is this answer met by the objection that, according to the rule, however strictly held, these collateral issues may, nevertheless, be introduced; for it may be, that the party whom the witness supposes that he saw write, was personated by another — or that the correspondence from which he has drawn all his knowledge, was conducted by a clerk, in the name of his principal. This is indeed possible. But the rule so restricted, does not lead to such issues; whereas, the relaxation of it renders them inevitable.
 

 We think it unnecessary to enquire whether the comparison of the two particular letters in the contract, and in the letter to Anderson, were admissible for the special purpose mentioned, because we see no legitimate purpose for which either of these instruments was received in evidence.
 

 The judgment must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Per Curiam. Judgment reversed.