JESSE YATES v. ROBERT YATES and wife.

*Possession of Land — Evidence — Expert — Handwriting.*

1. Possession of land retained by a grantor not indebted, is evidence either that he did not execute the alleged deed inconsistent with such possession, or that if he did, it was upon a secret trust for himself.

2. When the fact of possession of land is competent evidence, any acts or declarations of the possessor are also competent as characterizing his. possession.

3. One who has been in business as a Clerk and also been Clerk of Court. and Sheriff, and who testifies that he has been frequently called on to examine signatures, is a competent witness as an expert in the matter of handwriting

4. Where on the trial below such witness was permitted to compare the signature of a subscribing witness to an alleged deed, with the signature of such subscribing witness to a deposition admitted to be genuine, and thereupon testified that the signature to the deed was not genuine. *Held*, not to be error.

(*Kirby* v. *Masten*, 70 N. C. 540; *Horton* v. *Green*, 64 N. C. 64; *State* v. *Cheek*, 13 Ire. 114; *State* v. *Jacobs*, 6 Jones, 284; *Outlaw* v. *Hurdle*, 1 Jones, 150, cited and approved.)

CIVIL ACTION, to recover possession of real estate, commenced in Wilkes County and removed on affidavit of defendants to Alexander County, thence by consent to WATAUGA County and tried at Fall Term, 1876, of the Superior Court of said County before *Buxton, J.*

Both parties claimed under their father John Yates, who had been in possession of the land in controversy about fifty years before his death which occurred on the 6th day of February, 1875.

The plaintiff read in evidence a deed from John Yates and wife Elizabeth to himself, dated June 5, 1848, with David Yates and John Eller as subscribing witnesses. This deed was admitted to probate, Feb. 22, 1875, upon proof of

handwriting of both of said witnesses and also of John Yates, but that of his wife Elizabeth was not proved, the signing by her appearing to have been done by making a cross-mark.

The Probate Judge recited in his certificate, that both the grantors and witness David were dead and that witness Eller was a non-resident. There was no privy examination of the feme grantor.

The plaintiff also read in evidence the deposition of said Eller, taken during the progress of the cause and signed by him, in which he stated that he witnessed the execution of said deed at the instance of the grantors. Eller died before the trial of the cause.

The defence was, that the deed under which the plaintiff claimed was fraudulent, that John Yates died in possession of the land and by last will and testament devised the same to his wife by a second marriage, Fannie M. Yates, for life, remainder to her two daughters in fee, and that defendants obtained possession from the devisees under a contract of purchase which was completed since the institution of this action, by their executing to the feme defendant a deed in fee simple, and that she, feme defendant, is now the rightful owner of said land.

*Exceptions:*

1. The defendants read in evidence an authenticated copy of the last will and testament of John Yates, dated August 1st, 1853, and of the codicil annexed, dated July 23, 1860, devising said land to Fannie M. Yates for life, remainder to his two daughters, Angelina and Elizabeth. Plaintiff excepted.

2. The deed from the said devisees to defendant was read in evidence. This was objected to by the plaintiff for the reason (among others) that the deed had not been properly proved. Objection overruled.

3. There was evidence tending to show that the plaintiff and John Yates had had a conversation about the title to

the land, which was objected to on the part of the defend-
ants on the ground that the testimony involved a declaration
of the plaintiff on a different occasion and that he was not
entitled to the benefit of it.    Overruled.

4. Fannie Yates, a witness for defendants, was asked on
cross-examination, "Did you tell Rufus Eller that you had
made your husband swear, six months before his death, that
he had never made a deed to Jesse Yates ?"    Ans. " I can-
not recollect making any such remark."    And on re-direct
examination, the following was allowed by His Honor:
" Did you make your husband swear that he never made a
deed to Jesse Yates ?"    Ans.  " I did not."    Plaintiff ex-
cepted.

5. The defendants read in evidence a deed from John
Yates to David Yates, dated December 24, 1855, conveying
fifteen acres of land.    The plaintiff objected because the
date was subsequent to that of the deed under which plain-
tiff claimed and that therefore his right could not be
affected by it ; but the defendants insisted that the evidence
tended to show that the deed of June 5th, 1848, was not
genuine :   " 1. Because John Yates, the maker of the deed
to David Yates, was in possession at the date thereof claim-
ing ownership, which was inconsistent with the idea that he
had disposed of the land.    2. Because David Yates, the
grantee, is one of the subscribing witnesses to the deed of
1848, which was inconsistent with the idea that he really
witnessed a previous conveyance of the land by John
Yates."

6. J. E Pearce was introduced by defendants and testi-
fied that he did not think the signature of David Yates as
one of the subscribing witnesses to said deed, was genuine.
Defendants' counsel then handed to witness a bond from
said Yates to witness, who testified that he saw said Yates
sign the bond, the defendants insisting that this was done to
corroborate the statement of witness that he had seen David

Yates write his name, and not for the purpose of comparing handwritings. Plaintiff excepted.

7. J. P. Matthewson was then introduced by defendant, as an expert in the matter of handwriting. The witness stated that he had been in business as a clerk and store keeper for a considerable time; that he had been Clerk of the Court and Sheriff of the County, and had been frequently called on to examine signatures of persons, and from his means of observation could form an opinion satisfactory to himself, as to whether two pieces of writing were by the same person. Plaintiff excepted.

8. After examining the signature of John Eller to a deposition admitted to be genuine, and his signature as witness to deed of 1848, the witness stated that in his opinion the latter signature was not genuine. Plaintiff excepted.

9. Thomas Welch a Justice of the Peace testified for defendant, to the effect that John Yates made a statement to him which he reduced to writing. Yates swore to it and signed it on October 9th, 1871. The substance of the affidavit was, that he understood his son Jesse claimed to have a deed for the land, and he wanted to swear it was not so, or if he had a deed it was a forgery. The plaintiff objected to the reading of the affidavit on the ground, that it was an ex parte statement made by John Yates in the absence of the plaintiff. Objection overruled.

Under the instructions of the Court, the jury rendered a verdict for the defendants. Rule for new trial. Rule discharged. Judgment. Appeal by plaintiff.

*Messrs. R. F. Armfield, G. N. Folk* and *Scott & Caldwell,* for plaintiff.

*Messrs. T. J. Wilson* and *H. Bingham,* for defendants.

RODMAN, J. It is unnecessary to repeat here the facts on which the several exceptions of the plaintiff are founded, as

they will be found by reference to the case sent up from the Superior Court.

We proceed to consider the exceptions in their order:

*First exception:* Because of the admission in evidence of the will of John Yates, disposing of the land in controversy.

It is admitted that no act or declaration of John Yates, could divest or disparage any estate previously conveyed by him to the plaintiff. But the will, and the other acts and declarations of John Yates hereafter spoken of, were not allowed as evidence for such purpose.

The plaintiff claimed title under an alleged deed from John Yates dated on 5 June, 1848, and proved on 22 February, 1875, after his death which took place on 6 February, 1875. As both parties claimed under John Yates, the plaintiff as his grantee, and the defendants under his devisees, there was no controversy as to his title.

It was in evidence that before and at the date of the alleged deed to the plaintiff, John Yates was in possession of the land in controversy and so continued (with the exception of a piece which he sold to his son David) up to his death, a period of over twenty-five years, without having ever surrendered the possession to the plaintiff.

It is a presumption that a person in possession of land holds for himself as tenant in fee. 1 Greenl. Ev. § 109. This presumption however is one of fact only, and may be rebutted by proof of declarations of the tenant in disparagement of his right; as for example, that he holds under some other person.

The purpose for which the will of John Yates and other acts and declarations by him, while in possession and after the alleged deed to the plaintiff, were allowed in evidence, and that to which they were restricted by the Judge, was to corroborate this presumption and to exclude any supposition that he held possession as tenant of the plaintiff or by his license, and to satisfy the jury that he held claiming ad-

versely to the plaintiff, and all others. It must be admitted that evidence of the unchanged and continued possession of the supposed grantor was competent evidence to impeach the supposed deed. Ever since *Twine's* case (1 Smith L. C.) it has been held in a great number of cases, that possession retained by an indebted grantor, inconsistent with the terms of the deed, was evidence of a secret trust for the benefit of the grantor, and that therefore the deed was fraudulent as to his creditors. Upon the same principle, possession retained by a grantor not indebted, is evidence, either that he did not execute the alleged deed inconsistent with such possession, or that, if he did, it was upon a trust for himself. The reason in each class of cases is, that it is unusual and therefore improbable, that a vendee for value, who must be presumed to know who is in possession, will permit his vendor to remain in the enjoyment of the property, without the payment of rent, or at least without some incontestable acknowledgment of his title.

This doctrine is so fully adopted in our law, that a possession by one who entered as a tenant, for twenty years after the termination of the tenancy or after the last payment of rent, bars any action by the landlord for the recovery of the land. C. C. P., § 26. It has long been the settled law, that if a person enters upon land not as a tenant, but without any right or title at all, an adverse possession for twenty years will create the presumption of a deed from the true owner, if not under a disability.

If the fact of possession is competent evidence, any acts or declarations of the possessor must also be competent as characterizing his possession. This has been very often held in cases where the question was, whether a prior deed from the possessor had been made in fraud of his creditors. The cases on this point are numerous. I cite the most recent in this Court. *Kirby* v. *Masten*, 70 N. C. 540. The cases also are very numerous where declarations of a person in posses-

sion have been admitted for other purposes. In most of them the declarations have been against his interest, as being in disparagement of his title.

Greenleaf says: "Possession is *prima facie* evidence of seisin in fee simple; and the declaration of the possessor that he is tenant of another, it is said, makes most strongly against his own interest, and therefore is admissible. But no reason is perceived, why every declaration accompanying the act of possession, whether in disparagement of the claimant's title, or otherwise qualifying his possession, if made in good faith, should not be received as part of the *res gestæ;* leaving its effect to be governed by other rules of evidence." 1 Greenl. Ev. § 109.

I have not been able to find any case which covers the present. But as the declarations tended merely to confirm the presumption arising from the possession and to rebut any suspicion that it was not adverse, we think they were competent. The worst that can be said about them is that they were unnecessary.

This exception is overruled.

*Second exception:* The deed from the widow and daughters of John Yates, made to the defendants after his death, was immaterial.

It was unnecessary for the defendant to show title in himself. But it is manifest that, whether it had been properly proved or not, its admission could not prejudice the plaintiff. This exception is overruled.

*Third exception:* This exception, although not so stated, would seem necessarily to have been taken by defendant, as it was to the admission of evidence offered by the plaintiff. Hence it need not be noticed.

*Fourth exception:* We see no error in the Judge's ruling. The question was intended to enable the witness to contradict evidence previously given tending to affect her credit. Exception overruled.

YATES *v.* YATES.

*Fifth exception :* The reasons given for overruling the first exception apply also to this. The Judge however, gave as one of his reasons for admitting the deed, that it was not only the declaration of John Yates, but also of David Yates, one of the witnesses to the plaintiff's deed, and being subsequent to the plaintiff's deed, was inconsistent with his attestation. We do not concur with His Honor in this reason, for there is no presumption that a witness has notice of the contents of a writing which he attests. His Honor's conclusion however, was supported by the first reason given by him. Exception overruled.

*Sixth exception :* The testimony of the witness was certainly competent in the limited application which His Honor allowed to it, viz : as corroborating the statement of the witness that he had seen David write, by exhibiting the writing. The question of the comparison of hand-writings is not presented.

*Seventh exception :* We concur with the Judge that Matthewson was competent as an expert in hand-writing to testify as to his opinion. An expert in any art or science is one who has skill in it. Greenl. Ev. § 440. There are various grades of experts, and the highest degree of skill is not necessary. A physician who has never specially studied the diseases of horses, and never saw a case of glanders, may give his opinion whether a mule had that disease. *Horton* v. *Green*, 64 N. C. 64. Merchants and others who habitually receive and pass the notes of a bank are experts. *State* v. *Cheek*, 13 Ire. 114 ; *State* v. *Jacobs*, 6 Jones, 284. Exception overruled.

*Eighth exception :* The witness was allowed to compare the signature of John Eller as subscribing witness to the alleged deed from John Yates to the plaintiff, with the signature of said Eller to a deposition introduced by the plaintiff in evidence on the trial. This was permissible under the decision in *Outlaw* v. *Hurdle*, 1 Jones, 150. The general practice

seems to be more liberal than what was approved in that case. Greenleaf says : "Where other writings admitted to be genuine are already in the case. · Here the comparison may be made by the jury, with or without the aid of experts." Greenl. Ev. §§ 578–576, note 4. *Chandler* v. *Le Baron*, 45 Me. 534. In the famous Howland will case, 4 Am. L. Rev. 625, experts and the jury were allowed to compare not only the signatures of the alleged testatrix to papers in evidence as bearing directly on the issue, but also her signatures to papers put in evidence only for the purpose of comparison, and the signatures of many other persons not parties to the action to papers having no connection with the subject of it. This case however is not cited as an authority. This exception is overruled.

*Ninth exception :* The remarks made on the first exception, apply to this. The exception is overruled.

There is no error in the proceedings below.

PER CURIAM.                          Judgment affirmed.