G. J. THORNBURG v. R. A. MASTEN.

*Contract of Purchase—Description in—Deed.*

1. The consideration of a contract to convey land need not be set out in the writing.

2. Where the contract is as follows: "Received of G. T. five hundred dollars on account of the sale of my interest in the 'Lenoir lands,' owned by myself and J. W. T."; *Held,* that the description is sufficient to admit parol evidence to identify the land.

(*Miller* v. *Irvine,* 1 Dev. & Bat., 103; *Ashford* v. *Robinson,* 8 Ired., 114; *Green* v. *Thornton,* 4 Jones, 230; *Kent* v. *Edmonston, Ib.,* 529; *Farmer* v. *Batts,* 83 N. C., 387; *Henly* v. *Wilson,* 81 N. C., 405; *Smith* v. *Low,* 2 Ired., 457; *Reddick* v. *Leggett,* 3 Mur., 539, cited and approved.)

CIVIL ACTION tried at Fall Term, 1882, of WILKES Superior Court, before *Gudger, J.*

This action was instituted against the defendant, J. S. Call, and the heirs of William Masten, for a specific performance of a contract to convey land, entered into by the said Masten with the plaintiff, Thornburg.

The defendants, with the exception of Call and Brown, are the heirs-at-law of William Masten.

The facts are, that some time in the year 1863 said Masten contracted to sell to the plaintiff one undivided moiety of a tract of land lying on Fishing creek, in Wilkes county, adjoining the lands of N. Parker, J. W. Transean and A. Winkler, containing,

in all, two hundred and twelve acres (the other moiety being owned by J. W. Transcan), giving to the plaintiff the following paper writing: "Received, April 21st, 1863, of George Thornburg, five hundred dollars on account of the sale of my interest in the Lenoir lands, owned by myself and J. W. Transcan." (Signed by William Masten.)

By the agreement, Masten was to have the land surveyed, which he pretended to do, but afterwards refused to make the plaintiff a deed for the same, though often requested so to do.

Before his death in 1876, Masten went into bankruptcy and included the land in dispute in his schedule. It was allowed him as his homestead, and his reversionary interest was sold by his assignee and purchased by James Calloway and G. H. Brown, who soon afterwards sold the same to the defendant, Call, who had full knowledge of the fact that Masten had contracted to sell his interest to plaintiff and that the latter had paid five hundred dollars towards the purchase.

The defendant, Brown, answered that he had no interest in the land.

The defendant, Call, among other defences set up in his answer, insisted that the description contained in the receipt set out in the complaint was so indefinite that the court could not know with any degree of certainty the land of which it is asked to decree conveyance.

The case was submitted to the jury upon the issues raised by pleadings, and upon an intimation of His Honor that said receipt was too vague in its description, and was not a sufficient memorandum in writing to entitle the plaintiff to recover, he suffered a nonsuit and appealed.

No counsel for plaintiff.
*Mr. L. L. Witherspoon,* for defendants.

ASHE, J.   The question is, whether there was error in the ruling of His Honor that the receipt for the five hundred dollars

was too vague and uncertain to take the contract out of the operation of the statute of 29 CHARLES II.

We are at a loss to know upon what ground His Honor intimated the opinion that the writing recited in the complaint was insufficient to maintain the action upon it: whether it was upon the ground that the full consideration, agreed to be paid by the plaintiff, was not mentioned in the writing, or because the description of the land was too uncertain. But in either view there was error in the opinion expressed by him.

Although in England it is held that in any contract for the conveyance of land the consideration must be set forth in the agreement, it has been decided otherwise in this state. In *Miller* v. *Irvine*, 1 Dev. & Bat., 103, in which Chief-Justice RUFFIN gave an elaborate opinion reviewing the English and American decisions on the subject, it was held that our act of 1819, copied from the statute of CHARLES II., to make void parol contracts for the sale of lands and slaves, did not require that the consideration of the contract should be set forth in the written memorandum of it. This decision was followed by *Ashford* v. *Robinson*, 8 Ired., 114; *Green* v. *Thornton*, 4 Jones, 230; *Kent* v. *Edmonston*, *Ib.*, 529, and other cases that might be cited to the same effect.

The other point, as to the vagueness and uncertainty in the description of the land, has been equally well settled by the adjudications of this court, notably in *Farmer* v. *Batts*, 83 N. C., 387, and *Henly* v. *Wilson*, 81 N. C., 405, and the numerous decisions cited in each of those cases. In the former, which was an action for the specific performance of a contract, the written memorandum relied upon as evidence of the contract was, as in this case, a receipt as follows: " Received of W. D. Farmer fourteen hundred dollars, in full payment of one tract of land containing one hundred and ninety-three acres, more or less, it being the interest in two shares adjoining the lands of James Barnes, Eli Robbins and others. This 25th of January, 1864." This receipt is very similar in its terms to that in the case before us, with the differ-

ence that, here, the land is more specifically described by giving the name of the land as the " Lenoir land." The name of a place, says Chief-Justice RUFFIN, in *Smith* v. *Low,* 2 Ired., 457, like that of a man, "may and does serve to identify it to the apprehension of more persons than a description by coterminous lands and water courses, and with equal certainty. For example, 'Mount Vernon, the late residence of General Washington,' is better known by that name than by a description of it as situate on the Potomac river and adjoining the lands of A, B, and C."

In *Reddick* v. *Legget,* 3 Mur., 539, it was said by HENDERSON, J.: "If I grant White Acre, which I purchased of J. S., and which descended to me from my father, White Acre will pass, although I purchased it of J. N. and not J. S., and although it descended to me from my mother and not from my father; it is sufficiently identified by its name, and the other descriptions are not sufficient to render it uncertain."

Such particularity in the description of land conveyed or contracted to be conveyed, as will give the court certain and unmistakable information of the land that is meant, is not required, and could rarely even be attained. All that is required is that the land should be described with such certainty that by proof *aliunde* the description may be fitted to the thing. In almost every case, extraneous proof is requisite and admissible to apply the description to the land meant to be conveyed. *Smith* v. *Low, supra.*

There is error. A *venire de novo* is awarded.

Error.                                         *Venire de novo.*