ROBERT A. TUNSTALL v. RICHARD COBB, et al.

*Evidence —Expert— Comparison of Writings—Estoppel— Deed—Release— Contract—Specific Performance.*

1. A witness, who has qualified himself as an expert, may, in the presence of the jury, be allowed to compare a paper whose genuineness is questioned, with another paper executed by the party who alleges the falsity of the first, and express an opinion thereon, provided the instrument so proposed to be made the basis of comparison is not denied, or the person by whom it is alleged to have been made is estopped to deny it; but where the paper offered as such basis requires proof to establish its authenticity, it is erroneous to admit it in evidence.

2. In an action to recover land, the plaintiff offered a deed to himself from the devisor of the defendant, upon which there was an endorsement, not under seal and not registered, alleged to have been made by plaintiff in the following words, "I relinquish all my right and title to the within deed;" there was also evidence tending to show that the devisor lived on the land, paying taxes thereon, and occupying it as his own for a number of years, and that his devisee continued to do the same for some time after his death; that the plaintiff lived near by and never asserted any claim to the land until after the death of the devisor, and had declared that he had no interest in it : *Held,* (1) the endorsement on the deed did not operate as a reconveyance of the estate conveyed by the deed ; (2) Neither the endorsement, nor the facts of

possession and declarations of the plaintiff estopped him from asserting his title under the deed; (3) but if the endorsement was made upon a valuable consideration (which may be proved by parol evidence), it may be treated as a valid contract to reconvey, and in a proper action a specific performance thereof decreed.

This was a CIVIL ACTION, for the possession of land, tried before *MacRae, J.*, at November Term, 1890, of GRANVILLE Superior Court.

Defendant Cobb was admitted to be the tenant of the defendant S. B. Hays, who was allowed to come in and defend as landlord.

Both parties claimed title to the land in dispute under one Peter Hays.

The plaintiff offered in evidence a deed from Peter Hays to himself, dated 6th of March, 1886, for the land described in the complaint, duly proven and registered. Upon this deed was an endorsement in these words:

" I relinquish all my right and title to the within deed.
ROBERT A. TUNSTALL."

The plaintiff then offered as a witness, Jos. A. Fuller, who testified that he once owned this land and thinks it is worth $75 or $100 per year; that there are forty acres in it, more or less. There are seventy-six acres in the whole Hays tract. Peter Hays was in possession of it but a short time before he sold it to Tunstall. He went back after he was married the last time.

Defendant offered as a witness W. H. Parrott, who testified that Mrs. Hays (defendant) and Peter were married in 1877. They lived on the land in dispute from then until Peter Hays' death in August, 1889. She and her tenants have been in possession ever since. Witness has seen the deed from Peter Hays to plaintiff before. It was sometime in the winter after his death. The endorsement was on it then.

Defendant's counsel then offered to read the endorsement, to show an estoppel upon plaintiff, and also as color of title in defendant, but, upon objection, by plaintiff it was ruled out because it had not been proven.

Mrs. Hays then testified that she is the widow of Peter Hays, was married thirteen years before he died in August, 1889. He left a will, and witness is his executrix. Witness and her husband lived on the land from their marriage until his death, and it has been occupied by the tenants of witness ever since his death. Before the marriage, Peter Hays lived on the land twelve years and stopped living there awhile. Mr. Parrott found this deed in Mr. Hays' papers. All the time witness' husband was in possession, the plaintiff made no claim to the land. Her husband paid the taxes. Tuesday after Mr. Hays was buried, was the first time witness heard of plaintiff's claim to the land. He said he had a deed to the land and would have it. But witness heard him tell Mr. Hays five or six years before his death, that he, plaintiff, had never paid a dollar for the land and did not have any claim on a foot of it; that he never intended to have it while Hays was living or after he was dead.

W. H. Hunt testified that he is cashier of the Bank of Oxford, and has been so about four years, and has been connected with the bank about six years, and thinks he has had experience enough to enable him to judge of handwritings.

Witness was shown the endorsement upon the deed signed R. A. Tunstall, and at the bond on the back of the summons in this action, and compared the signature of R. A. Tunstall on these papers and said that they were the same. Witness was then asked to look at another paper, a capias and bond, where the signature of R. A. Tunstall had already been proven by a witness on this trial, but which paper has no connection with this case, and to compare the handwriting. Objection by plaintiff; overruled, and plaintiff excepts.

Witness answered that the name of R A. Tunstall on these two papers was in the same handwriting.

Witness was asked to compare the name of J. M. Hays on the endorsement, and on other papers not connected with this cause, the signatures to which had been acknowledged by him to be genuine. Objection by plaintiff; overruled, and plaintiff excepted.

Witness said that the signatures were the same.

The Court then permitted the endorsement upon the deed to be read in evidence. Plaintiff excepted.

There was evidence tending to show that plaintiff and Peter Hays occupied the land in controversy for some time, and that plaintiff resided near by.

The Judge, among other things, charged the jury that, "the plaintiff having a deed for the land, and both parties claiming under Peter Hays, the plaintiff is the owner and entitled to the possession of the land in dispute, nothing else appearing; but the defendant, Mrs. Hays, invoked the doctrine of estoppel. The question then is, did the plaintiff make the endorsement upon the deed? Was this endorsement, if made by plaintiff, intended as an agreement upon consideration between Tunstall and Peter Hays that Tunstall was to reconvey the land to Hays, or was it intended by both parties to it to be a re-conveyance, and did the plaintiff, after the making of the endorsement, permit Peter Hays to occupy the land as his own until his death? If you find all these things to be true, the plaintiff would be estopped from now claiming the land."

There was a verdict and judgment for defendant, from which plaintiff appealed.

*Messrs. J. B. Batchelor, L. C. Edwards* and *John Devereux, Jr.,* for plaintiff.

*Mr. A. W. Graham,* for defendants.

AVERY, J.: In the progress of the trial it became material to show that the subscription of the plaintiff's name to a writing indorsed on a deed, was his genuine signature. A witness had testified that what purported to be the plaintiff's signature to a bond endorsed upon a *capias* not connected with this action, was in his own proper handwriting, and genuine. On the examination of the cashier of a bank, who had qualified as an expert, defendant's counsel proposed to ask him to look at the signature on the *capias* and that to the writing endorsed on the deed, which was in evidence, and compare the handwriting. This the witness was allowed to do, despite the objection of the plaintiff.

Three reasons are given for excluding as incompetent a comparison by an expert witness, of a signature or writing not admitted to be genuine or connected with the case on trial, with a signature or writing, which has been offered in evidence, where the genuineness of the latter is drawn in question:

1. There is danger of fraud in the selecting of writings, offered as specimens for the occasion.

2. The genuineness of specimens offered may be contested, and thus numberless collateral issues may be raised to confuse the jury and divert their attention from the real issue.

3. The opposing party may be surprised by the introduction of specimens, not admitted to be genuine, and for want of notice may fail to produce and offer evidence within his reach, tending to show their spurious character. 1 Greenleaf, §§ 578 to 580; *Fuller* v. *Fox*, 101 N. C , 119; *Outlaw* v. *Hurdle*, 1 Jones, 150; *Tuttle* v. *Rainey*, 98 N. C., 513; *Pope* v. *Askew*, 1 Iredell, 16.

A comparison of handwriting is in some States permitted to be made by the jury or experts, and in others only by experts in the presence of the jury. Where a witness has acquired a knowledge of the person's writing, he compares a

disputed signature or writing with an exemplar in his own mind. But when he testifies as an expert he must first be furnished, as the basis of his testimony, with some specimen the genuineness of which may be insisted on before the jury. The law was finally settled in England (in 1854) by 17 and 18 Victoria, which provided that a disputed writing may be compared by witnesses in the presence of the jury with "*a writing proved to the satisfaction of the Judge to be genuine,*" and both may be submitted to the jury. It seems that there is no statute in any of the States which, like the English law, empowers the Judge to determine the *quantum* of proof necessary to establish the genuineness of another specimen placed in juxtaposition with the disputed writing. But there is a great diversity in the rulings of the Courts of the various States as to what is sufficient proof of the genuineness of a writing to constitute it a standard for comparison. In some of the States only specimens, admitted to be genuine, or filed as genuine by the party whose writing gives rise to the controversy in the records of the action involving it, are admissible as a criterion for testing the disputed writing, while in others it is competent to create a standard of comparison by offering proof of its genuineness. See 9 Am. and Eng. Enc., pp. 279 to 290.

In North Carolina it seems to be settled law that an expert in the presence of the jury may be allowed to compare the disputed paper with other papers in the case, whose genuineness is not denied, and also with such papers as the party whose handwriting gives rise to the controversy is estopped to deny the genuineness of, or concedes to be genuine, but no comparison by the jury is permitted. *Pope* v. *Askew,* 1 Iredell, 16; *Outlaw* v. *Hurdle,* 1 Jones, 150; *Otey* v. *Hoyt,* 3 Jones, 407; *Yates* v. *Yates,* 76 N. C., 142; *Fuller* v. *Fox,* 101 N. C., 119. It will appear from an examination of the authorities that, while this rule differs to some extent from that adopted or formulated by the Courts of other States, it seems never-

theless to be definitely settled. 9 Am. & Eng. Enc., p. 285, and note 4. The tendency now seems to be to authorize by statute a comparison by witnesses and juries of disputed writings with others, whose genuineness is to be established in some manner pointed out by the law.

The paper offered as an exemplar or standard of comparison purported to be a "*bond and capias, where the signature of Robert Tunstall had already been proven on the trial.*" It does not appear, from the statement of the case, whether what purported to be the bond and capias purported also to be records of the Superior Court of Granville or of some other Court, but only that the "*paper* (capias, with bond endorsed) *has no connection with this case.*" Robert Tunstall had not admitted the genuineness of the bond or capias, and it constituted no part of the record of the case on trial, nor are we informed where it purported to belong It does not appear whether Robert Tunstall's name purported to have been written as an obligor or a witness to the bond, or as an officer who served and returned the capias, and it is obvious that we cannot declare that he was estopped to deny a signature, when we do not know to what it was appended. So that the genuineness of what purported to be the signature of Robert Tunstall, offered as an exemplar for the expert witness, was proven, if at all, only "*by a witness*" examined in the case. In *Yates* v. *Yates, supra,* the signature of one Eller to a deposition offered in evidence as genuine by one party, was compared by an expert witness, at the instance of the other party to the action, with the disputed signature; and in *Fuller* v. *Fox, supra,* it was declared, in effect, that even that comparison could not have been made by the jury. " A jury is to hear the evidence, not see it." *Outlaw* v. *Hurdle, supra.* It appeared, therefore, that the testimony offered, not being admitted to be genuine or connected with the case, was amenable to all of the objections mentioned by Mr. Greenleaf, *supra.*

Where Courts have established the general rule that a comp·rison of handwritings is to be excluded, the usual exception, as laid down by the highest authority (1 Wharton Ev., § 713), is that "when a writing, proved to be that of the party whose signature is in litigation, is already in evidence, *having been put in for other purposes,* then it is *admissible* to resort to this writing in order to determine the genuineness of the litigated instrument." In support of this proposition Dr. Wharton cites cases decided in those Courts that have opened the door much wider than this for the allowance of such comparisons, even by experts. But applying even this rule to our case, it is not pretended that the bond and capias were offered or admitted for any other purpose than to compare the signatures of Robert Tunstall, or one of them, with that on the back of the deed. It is manifest that the rules adopted in most of the States prior to the passage of any Act regulating the comparison of handwriting, were, as mentioned by RODMAN, J., in *Yates* v. *Yates, supra,* more liberal than that laid down by this Court. But we do not feel at liberty to disturb the settled practice. It is the province of the Legislature to determine whether it is best to alter or establish rules of evidence.

Both parties claim title under one Peter Hays, who, on the 6th of March, 1866, conveyed the land in dispute to the plaintiff Robert Tunstall. After the deed had been registered, the following endorsement purported to have been made: "I relinquish all my right and title to the within deed. March 10th, 1874." (Signed by Robert A. Tunstall and witnessed·by James Mc. Hays.)

It was the genuineness of the signature of Tunstall so endorsed on the deed that was disputed on the trial. But if we suppose that the signature was admitted, or was proved to the satisfaction of the jury, to be in the proper handwriting of Robert Tunstall, it would remain to determine whether, in any view of the case, the *feme* defendant, would

take as the devisee for life of Peter Hays. We think that the Court below erred in leaving the jury to pass upon the question whether Robert Tunstall was estopped by his own conduct from setting up a claim to the land in dispute. Nothing more appearing than that Peter Hays moved upon the land a second time in 1877, and was permitted to occupy it until his death in 1889 without paying rent, and that he paid the taxes during that period, these circumstances, taken in connection with Tunstall's declaration made to Peter Hays in presence of his wife, would not estop Tunstall from claiming under a deed registered before the endorsement was placed upon it. Mrs. Hayes testified that the plaintiff told her husband, five or six years before his death, that he had never paid a dollar for the land and had no claim on a foot of it, and that he did not intend to claim it while Peter should live, or after his death. After this conversation, Peter continued to live upon the land just as before, and enjoyed the rents, paying nothing but the accruing taxes. His position was in no respect analogous to that of one who buys land at a public sale and pays his money for it, because he is assured by another that he has no claim upon it. As Peter Hays had been the beneficiary by the arrangement, there would be no difficulty about placing him in *statu quo*. *Holmes* v. *Crowell*, 73 N. C., 613; Bigelow on Estoppel, 484. The writing endorsed upon the deed cannot operate as a reconveyance of the legal and equitable estate in the land by Tunstall to Peter Hays, and his Honor was in error in submitting that view to the jury, whether a valuable consideration had been shown for executing the writing on the back of the deed, or not. Even a paper-writing in the form of a deed, but without a seal, would not have operated to reconvey the land, no matter what was the real intention of the parties. *Avent* v. *Arrington*, 105 N. C., 377. Unless the writing can be enforced as a contract to reconvey, we would be at liberty to say that the plaintiff, if a

new trial should be awarded, must, in any event, recover, and we are confronted with the question whether it will be possible for the defendant on a new trial to set up the said endorsement as a contract to reconvey. The *feme* defendant, in her amended answer, relies upon the grounds, first, that the plaintiff by reason of the endorsement released and abandoned all interest in the land; secondly, that by his conduct *dehors* the conveyance or endorsement, he was estopped to set up a claim under the deed. The Judge held that there was evidence of an estoppel *in pais* which he submitted to the jury, and they found that the plaintiff by his conduct was estopped. Conceding that his Honor erred in this view of the case, and admitting that the writing and signing of the endorsement, together with the undisturbed occupation of the land by Peter Hays after his marriage to the *feme* defendant in 1877, and until his death in 1889, without payment of rent, would not necessarily show an abandonment by him of his rights under the deed, could the *feme* defendant, if she should *hereafter demand in an answer. a specific performance of the agreement* to reconvey (treating the endorsement as a contract) in any conceivable state of facts, establish her right in equity to such relief?

It is not essential, according to the construction given to our statute of frauds, that the consideration upon which one has contracted to convey land should be set forth in the written memorandum of the agreement to sell. *Thornburg* v. *Masten*, 88 N. C., 293; *Ashford* v. *Robinson*, 8 Ired., 114; *Miller* v. *Irvine*, 1 Dev. & Bat., 103. Therefore, if the language can be fairly construed as an executory agreement to convey the land described in the body of the deed, the consideration might be shown *aliunde*, and the defendant might ask a specific performance of the contract. When one person, moved by a sufficient consideration, declares a purpose to relinquish all of the right and interest that passed to him by virtue of the deed, on which the declaration is endorsed,

and it appears that the attempted release is made upon consideration to the grantor by the grantee on the back of the conveyance in fee-simple, a court of equity is not bound to stick in the bark, and refuse its aid to compel a formal reconveyance to the original grantor. There can be no doubt that the land referred to in the writing was that admitted to have been fully described in the deed, and its identity is as clearly ascertained as if the description in the deed had been copied in the endorsement. The quantity of interest that he intended to relinquish was all of his right and title in a piece of land that Peter Hays had conveyed to him in fee simple. The physical connection between the deed and memorandum is sufficient to make it valid, as the description of the subject-matter and of the quantity of interest, by the reference to the deed. 8 Am. & Eng. Enc., 712; *Mayer* v. *Adrian*, 77 N C, 83.

In *Beattie* v. *Railroad*, 108 N. C., 429, it was held that an instrument of writing signed, but not sealed, in which one agreed to relinquish to a railroad company the right-of-way over such route as might be fixed and ascertained by a survey through his land, was such a contract as a court of equity would have enforced by decreeing a specific perf rm-ance, had the company completed its line within reasonable time and before the presumption of abandonment had arisen from non-user. There, the identity of the right-of-way was to be established by the survey and location of the line, as in our case, by reference to the description in the deed. In that case "the right-of-way" would have been construed to mean the easement provided for in the charter. It is evident from the language that the parties intended that whatever title Robert Tunstall had in the land should be "relinquished" to Peter Hays, and if any consideration passed for that agreement, the Courts should compel him, upon a proper demand for such relief, to convey all of his right and title to those who take under the will of Peter Hays, accord-

ing to their several interests. In *Linker* v. *Long*, 64 N. C., 296, PEARSON, C. J., after stating that it was properly conceded on the argument that the endorsement on a deed, " I transfer the within deed to W. E. T. again," did not amount to a reconveyance, said, for the Court: " The only effect that can be allowed to this writing is that it furnishes evidence of an agreement to reconvey, which a court of equity will enforce by a decree for specific performance, provided it be supported by a valuable consideration." It is obvious, then, that if a valuable consideration is shown to have passed, the writing, though insufficient as a release, may be enforced as a contract to reconvey. What particular circumstances were relied upon by counsel to show the payment of the notes assigned by Fuller, or that any other consideration passed from Peter Hays to Robert Tunstall, it is not necessary that we should enquire. We take it for granted that all available testimony tending to show a consideration will be adduced on another trial. It is sufficient now to declare there was error in the charge in holding that there was evidence to go to the jury of an estoppel *in pais*, or of an actual release or reconveyance, as well as in the admission of testimony as to the comparison of handwriting, for which a new trial is awarded.

CLARK, J. (dissenting): It seems to me that the rule is correctly stated (1 Wharton Ev., § 713) that " when a writing, proved to be that of a party whose signature is in litigation, is *already in evidence*, having been put in for other purposes, then it is admissible to resort to this writing in order to determine the genuineness of the litigated instrument." This is consonant to sound reason, and is supported by many adjudications. It has been denied by no decision of any Court, and is expressly followed in this State by *Yates* v. *Yates*, 76 N. C., 142. It would seem that it should still be

followed as a just and proper principle.  In the present case, the record states that the paper offered as an exemplar or standard of comparison, was a bond and *capias*, where the signature of Robert Tunstall "had been already proved" on the trial.  The plain meaning of these words cannot be controverted.  It is not merely stated that there was evidence "tending to prove" such paper, nor does it appear in any way that there was any controverted evidence as to the genuineness of the signature to the *capias* and bond.  We are not to presume that the Court below erred.  The presumption is the other way.  The statement that the proposed exemplar "had been already proved," taken in connection with the fact that it is not alleged or stated that there was any evidence to contradict the genuineness of the paper, is conclusive, on appeal, of the fact that it had, indeed, been already "proved," *i. e.*, its genuineness not denied, when it had been offered in proof.  Otherwise, the record would state an untruth, since, if the genuineness of the writing offered as an exemplar had been controverted, it could not have been "proved" till the evidence had been passed on by a jury.  If the record is true, and we must take it so, the writing, which in a previous stage of the trial had been "proved" to be genuine, was properly allowed by the Court to be used by the expert as a standard of comparison for the signature in controversy.

*Per Curiam.*                                    Error.