S. A. HERRING ET AL. *v.* M. A. WARWICK AND
J. T. GREGORY ET AL.

(Filed 31 May, 1911.)

**1. Deeds and Conveyances—Purchaser—Title—Insufficient Acts to Divest.**

Title to lands under a registered deed given by the mortgagee in foreclosure proceedings is not divested by the mortgagor's refusing possession and grantee's thereafter surrendering the deed to the mortgagee and receiving back the purchase price he has paid, and especially so when the purchaser diligently urges his rights by appropriate proceedings for possession under his deed.

**2. Deeds and Conveyances—Title—Possession of Lands Unnecessary.**

It is not necessary that possession of lands be given to vest title to the grantee under a valid and sufficient deed.

**3. Deeds and Conveyances — Mortgages—Foreclosure—Judgment—Evidence—Unadjudicated Rights—Appeal and Error.**

Proceedings and judgment in suit to foreclose lands put in evidence in a subsequent action to declare certain rights of a purchaser at a sale thereafter arising, will not be considered on appeal of the later action to the Supreme Court when the rights of the parties, as determined in the former cause, were not considered by the court, and the judgment therein did not enter into the verdict in this case or in anywise affect it.

APPEAL from *Whedbee, J.,* at the August Term, 1910, of SAMPSON.

This action was brought originally to recover the possession of land, with rents and profits and damages for waste, with a prayer for the redemption of the land from a mortgage. The case was finally tried only upon the issue as to waste. On 27 December, 1894, S. A. Herring and his wife, Nellie A. Herring, executed a mortgage with power of sale upon the lands of the wife to John T. Gregory, to secure the payment of a note for $125 with interest. The debt was not paid and the mortgagee regularly sold the land under the power, and M. A. Warwick, one of the defendants, became the purchaser, paid the price, and Gregory conveyed the land to him by deed, which was duly registered. Nellie A. Herring having died, M. A. Warwick, the purchaser at the sale, brought an action against S. A. Herring, her husband and tenant by the courtesy, for the possession of the land. S. A. Herring answered the complaint in that action, and averred that Warwick had bought the land at the sale, under the power contained in the mortgage, for John T. Gregory, the mortgagee, and that by reason thereof, the relation of mortgagor and mortgagee between S. A. Herring, the defendant in that suit, and John T. Gregory still subsisted. The heirs of Mrs. Gregory were not parties to the suit. The Court submitted issues to the jury which, with the answers thereto, are as follows: 1. Did the plaintiff bid off the land described in the complaint for J. T. Gregory, the mortgagee? Answer: No. 2. Did the purchase, under which the plaintiff claims, terminate the relation of mort-

gagor and mortgagee subsisting between the defendant, S. A. Herring, and the mortgagee J. T. Gregory? Answer: No. 3. What are the plaintiff's damages? (No answer.) The Court thereupon adjudged that the land be sold by a commissioner to pay the mortgage debt, which was done, and John T. Gregory became the purchaser and the commissioner conveyed the land to him, upon payment of the purchase money, under the order of the court. He afterwards conveyed the land to M. A. Warwick, the defendant in the action. The testimony relative' to the transaction between John T. Gregory, mortgagee, and M. A. Warwick, with respect to the sale under the mortgage, was that of M. A. Warwick, who testified: "I bought the land at the sale. Nobody bid but me. Auctioneer cried it off. I never agreed to buy the land for Gregory. I paid Gregory for the land and bought it for myself. When I got the deed, I came and had it recorded. I tried to dispossess Herring. After Gregory got possession under the commissioner's deed, I bought it again. I don't know how Gregory got in possession. I have been in possession for ten or twelve years. First time I took a deed from Gregory, Herring would not give up the possession, and I went to Gregory and told him I would have nothing more to do with the land until he got possession. He paid me back the purchase money; at least, he gave me his note for the amount paid by me, and when I bought the land from him the second time he gave me credit for the note. I knew the title was in Nellie Herring's name and her bodily heirs. I knew the land had come to her from her father. Nellie Herring was my aunt. She had been dead two years when I first bought the land from Gregory. I brought suit against Herring because he would not give up possession. Mr. Gregory was a witness in the suit. I testified on the trial myself. Mr. Gregory paid me back the money that I paid him for the land. He bought the land himself (under the judgment of the court). I then got a deed from him and went into possession. It was in the spring of 1899. I don't know when; I took possession some time after Herring moved." The issues submitted in this case, with the answers thereto, are as follows: 1. Is the defendant Warwick the owner of the land described in the complaint, for and during the life

of S. A. Herring? Answer: Yes. 2. Are the plaintiffs, other than Lonnie Herring, the owners in remainder of said lands, subject to the life estate of said S. A. Herring? Answer: Yes. 3. If so, did defendant Warwick commit waste upon said lands? Answer: Yes. 4. If so, what are plaintiffs' (other than Lonnie Herring) damages? Answer: $300. 5. What is the amount now due or original mortgage debt? Answer: $126.50, with 8 per cent interest from 15 February, 1898.

The court charged the jury as follows: "The act and conduct of the defendant Warwick in accepting .a repayment of the money paid by him to Gregory at the first sale, and the surrender of the lands conveyed to him by deed of .Gregory and wife back to Gregory was, in effect, a renunciation on his part of all right to the lands; and, therefore, the deed from Gregory and wife to Warwick (the second deed) had no more effect than to convey to him, Warwick, the life estate of S. A. Herring; and if you. believe the defendant Warwick's own testimony, you will answer the first issue 'Yes.' " To this instruction the defendant M. A. Warwick excepted and appealed from the judgment which was entered upon the verdict.

*H. A. Grady and F. R. Cooper for plaintiff.*
*Faison & Wright and J. D. Kerr for defendant.*

WALKER, J., after stating the case. We think there was error in the instruction of the court. In the first place, there was no sufficient evidence for the jury that Warwick surrendered possession of the land to Gregory. On the contrary, he demanded the possession of S. A. Herring, and upon his refusal to give it up, he brought suit aginst him to recover it, thereby continually asserting his right to the possession acquired by his purchase from J. T. Gregory, the mortgagee, and the deed the latter made to him, which was duly and promptly registered. Even had Warwick torn up or otherwise destroyed his deed, it would not have had the legal effect of revesting the title in Gregory. In *Linker v. Long,* 64 N. C., 296, it appeared that a deed for land had been executed by W. F. Taylor to Isaac Linker 6 November, 1852, and on 11 May, 1853, it was redelivered by Linker to Taylor, with the following endorsement upon it: "I transfer

the within deed to W. F. Taylor again." Taylor kept the possession of the land during his life, and his heirs retained possession to the time of bringing the suit. The lower court refused permission to read the deed in evidence. This Court held that ruling to be erroneous, and with reference thereto, said: "This ruling is based upon the deed that it had been redelivered by the bargainee to the bargainor, the legal effect of this writing on the back was to nullify the deed, and make it as if it had never been executed. By force of the deed, and the operation of the statute, 27 Hen. VIII, an estate of *freehold of inheritance* was vested in Linker on 6 November, 1852. The question is, has that estate been divested by any conveyance, or means, known to the law. Suppose that deed, upon 11 May, 1853, had been cancelled, torn up or burnt, by consent of both parties, the estate would not have been thereby revested in Taylor, for by the common law a freehold estate in land can only pass by delivery of seizin—under the Statute of Enrollments by 'deed of bargain and sale indented and enrolled'—and under the act of 1715, by 'deed duly registered'; so, the freehold having passed to Linker, could only be passed from him either to a third person or to Taylor by some kind of conveyance known to the law. A will, being ambulatory, may be revoked by cancellation; a covenant or agreement, being *in fieri,* a thing to be done—by cancellation or by deed of defeasance, which may be executed after the covenant. But a conveyance of a freehold estate of inheritance, being *a thing done,* cannot be *undone* by cancellation, or in any other mode, and the estate can only be revested by another conveyance, unless a condition or deed of defeasance executed *at the same time* and as a part of the conveyance, be annexed to the estate, giving to it a qualification by which it may be defeated. For illustration, a mortgage is a conveyance on condition. If the money be paid at the time fixed the estate is revested in the mortgagor, but if the condition be not performed by payment at the day, the estate becomes absolute, and although the money be paid and accepted afterwards, the estate can only be revested by another conveyance." The *Chief Justice* is referring, in the last clause, to a strict foreclosure and not to the right or equity of redemption. He is illustrating the point by giving an exam-

ple of a deed upon condition and applying the strict rule of the common law to the relation of the parties without regard to the equitable right of the mortgagor, and the illustration is an apt one. This decision has been approved in several cases, and among others we may cite *Wharton v. Moore,* 84 N. C. 479; *Hare v. Jernigan,* 76 N. C., 471; *Browne v. Davis* (opinion by *Justice Shepard*), 109 N. C., 23; *Tunstall v. Cobb* (opinion by present *Chief Justice*), 109 N. C., 316; *Hodges v. Wilkinson,* 111 N. C., 56. The law, as declared in *Linker v. Long,* has been recognized and acted upon to the present time. If the facts, as they appeared in that case, did not have the effect of revesting the title in the grantor, who remained in the possession of the land after the endorsement was made on the deed and the latter was re-delivered to him, how can it be said, as a matter of law, that the acts and conduct of Warwick divested the title which he had acquired by his purchase and the deed from the mortgagee, which was registered? J. T. Gregory paid the purchase money back to him for the reason that Herring had possession of the land and refused to surrender it. This was not an abandonment of his title or of the right he had acquired under the sale and deed. On the contrary, he almost immediately asserted his right to the possession and by suit attempted to enforce his claim as against one of the mortgagors. It was not necessary to the vesting of the title in Warwick that Gregory should have given him the possession of the land. The title vested by the deed and its registration, the latter taking the place of livery of seizin. The verdict upon the first and second issues resulted from an erroneous instruction of the judge to the jury. The question as to the legal effect of the proceedings and judgment in the case of *Warwick v. Herring,* upon the rights of the parties to this litigation, was not considered by the Court and, therefore, did not enter into the verdict or in any way affect it. We cannot, therefore, consider that question. The parties have had no opportunity to be heard in regard to it, and apart from the fact that it was offered as evidence, it has played no part in the decision of the case. The defendant has had no chance to except to any ruling upon it, and it would not be right or in accordance with correct procedure, to pass upon it at this time. We will

HERRING *v.* WARWICK.

do so if it ever comes before us directly for our decision, but it is not now presented in any tangible form. It involves the application of an important principle of law and is not at all free from difficulty. The plaintiff offered in evidence the proceedings, verdict and judgment in that case, and relied upon them to show that Warwick was seized only of a life estate and was, therefore, liable to plaintiff, as reversioners, for waste committed upon the premises, as it is alleged that his act produced lasting damage to the inheritance. The judgment professes to sell the entire estate in the land, and not only the life interest, or to be more accurate, its operation is not, in terms, restricted to the life estate, though there is one expression in the decree of confirmation which indicates that such may have been the intention of the court. Did it operate upon the estate in reversion, and, if so, are plaintiffs bound by it, not having been made parties to the suit? Does it bind them by reason of the fact that they introduced it and rely upon it? Are they still required, notwithstanding the judgment and independently of it, to prove that the sale of the land by Gregory, under the power contained in the mortgage from Herrings to him, is not valid as to them, or, in law, does the judgment establish this fact, although they were not parties to it? These are questions, and perhaps there are others, which may attract the attention of counsel in the further progress and development of the case, and upon which they will enlighten us if the matter again comes before us. All we can now say is that the verdict, in an essential particular, was rendered under the influence solely of an erroneous instruction, and it should, therefore, be set aside.

New trial.